MARY C. HEALEY AND PHILIP J. HEALEY, HER HUSBAND, PLAINTIFFS-APPELLEES, v. PATRICK TRODD, DEFENDANT, AND C. F. MUELLER COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AND CONTINENTAL CAN COMPANY, INC., A CORPORATION OF THE STATE OF NEW YORK, DULY AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued January term, 1939—Decided July 20, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the plaintiffs-appellees, *William T. Cahill* (*Edward A. Markley, James B. Emory* and *Alfred B. Van Houten,* of counsel).

For the defendant-appellant C. F. Mueller Company, *Burnett & Trelease* (*Charles C. Trelease,* of counsel).

For the defendant-appellant Continental Can Co., Inc., *Milton, McNulty & Augelli* (*John Milton,* of counsel).

PER CURIAM.

This is an appeal from a judgment of the Hudson County Court of Common Pleas wherein plaintiff Mary C. Healey was awarded $15,000 for personal injury suffered by her, and Philip Healey, her husband, was awarded $1,500 *per quod.*

The facts in the case are these: Mrs. Healey had cooked spaghetti contained in a can manufactured by the defendant, Continental Can Company, hereafter referred to as the Can Company; the defendant C. F. Mueller Company, a corporation, hereafter referred to as Mueller, had filled the can with the food in question. When Mrs. Healey, following the cooking instructions printed on the can label, removed the can from a saucepan of boiling water, it exploded causing her serious injury.

The cans were manufactured by and sold to Mueller by the defendant Can Company, and were delivered to Mueller, "open at the top, the covers being supplied separately." When the cans were filled with the foodstuff by Mueller, the tops or covers were placed on the cans by an employe of Mueller, operating a machine in the Mueller plant, which machine was owned and maintained by the defendant Can Company. The top or cover was put on the can after it was filled with the foodstuff.

The jury, to whom the facts were submitted, was privileged to find that the instructions for the preparation of this food-

stuff, which were printed on the label pasted on the can, were strictly followed by Mrs. Healey, who said she placed the can on its side in a saucepan of boiling water and left it there for fifteen minutes. She used a folded towel to remove the can from the boiling water, preparatory to opening same. At that moment the can exploded in her hand "just like a cannon cracker." The plaintiff charged both defendants with negligence which caused her injuries, the Can Company with negligence in the manufacture of the can, and Mueller with negligence in the filling and sealing of the same.

Both defendants appeal and seek a reversal upon the ground that the court refused to order a nonsuit or direct verdicts in their favor, the argument being that there was no evidence of negligence against either of them. These motions, we think, were properly denied.

The testimony of Charles L. Mantell, chemical engineer, offered as an expert witness on behalf of the plaintiff, left it open to the jury to find that the bursting of the can was due to abnormal pressure on the tin, which pressure was "sufficiently augmented by the heating of the boiling water to cause the tin to fail." The net result of his testimony was that the can was insufficient for the uses for which it is intended because, as he said, the can had poorly made seams and was inadequately soldered along the seams; that the raw material used was improper, "reducing over-stressed metal areas, creating a weak and unsafe can," and, further, that there had been "inadequate pressure and leakage tests" on the can. On the matter of the negligence of Mueller, the witness said that the probable cause of the bursting of the can was "under-processing of the food product, poor sealing, overfilling of the can, lack of head space caused by such overfilling, and the resultant development of pressure when the can was heated, insufficient inspection of the can after packing, and careless and negligent inspection by adequate methods." All of these, the witness said, were concurrent, probable causes.

The appellants argue that the can could not have burst because of immersion in boiling water; that it must have been heated directly by flame or that the water in which the

can had been placed had evaporated from boiling and that it must have been the application of dry heat that caused the increase of pressure. This argument is based on the testimony of several defense witnesses who made that deduction because there appeared "shiny solder" at one point on the can and because the can was somewhat blackened on one end, and from the fact, as they say, that some of the spaghetti was charred.

The witness, Mantell, on cross-examination, attributed the "shiny solder" to passing the can through a "melting zone" while the can was being put through the process of sealing or soldering. He had no knowledge whether the particles of spaghetti on the can had been charred. Other witnesses for the plaintiffs denied the presence of the charred foodstuff.

In our view, the testimony of the witness, Mantell, was such that if the jury accepted it, as apparently it did, negligence was made out on the part of each of the defendants. The defendants in turn, by expert witnesses, offered testimony to rebut the theory of the expert for the plaintiffs, but all this, of course, made a fact issue. Consequently, there was no error in refusing to order nonsuit or to direct a verdict in favor of the defendants.

The Can Company makes a second point to the effect that the trial court erred in stating to the jury in the supplemental charge that negligence might be inferred against the Continental Can Company, Inc., solely by virtue of the bursting of the can. We do not find this to be the fact. Counsel for the Can Company started to enter an exception to the supplemental charge on the record. The court then stated that the part of the charge to which objection was about to be made was directed only to the Mueller Company and then counsel for the Can Company said, "I have no interest in it." In any event, no exception was taken and the point fails *Benz* v. *C. R. R.,* 82 *N. J. L.* 197.

The third point argued by the Can Company is that the trial court refused to allow into the evidence sworn answers to a demand for bill of particulars directed to plaintiff Mrs. Healey in a previous action some years ago (1929) in the New York Supreme Court, wherein she was plaintiff. We

do not find that these answers to the interrogatories in question, which were propounded in a separate and distinct suit in the year 1929, were ever offered in evidence. The point fails.

It is next argued on behalf of Mueller that there was error in the charge of the court in applying the doctrine of *res ipsa loquitur*. We see no error. The point has been disposed of contrary to the contention made by the Mueller Company in the case of *Taylor* v. *Berner,* 7 *N. J. Mis. R.* 597, reversed on other grounds in 106 *N. J. L.* 469. We think this case on the question of *res ipsa loquitur* is controlling.

It is next argued by the appellant Mueller that the court erred in refusing to charge certain presented requests. We have examined the rejected requests to charge with care and in our judgment they were properly rejected. The court in a charge that was eminently fair, clear and comprehensive, submitted the several issues to the jury.

The last point made by appellant Mueller is that the court erred in excluding evidence as to the absence of similar happenings in the past. The testimony was inadmissible. *Temperance Hall Association of Trenton* v. *Giles,* 33 *N. J. L.* 260.

The judgments will be affirmed, with costs.