65 So.2d 169

**FLORENCE COCA COLA BOTTLING CO. v. SULLIVAN.**

8 Div. 638.

Supreme Court of Alabama.
March 26, 1953.

Rehearing Denied May 28, 1953.

Bradshaw, Barnett & Haltom, Florence, for appellant.

58

Mitchell & Poellnitz, Florence, for appellee.

STAKELY, Justice.

This is a suit by Daisy Kirby Sullivan (appellee) against Florence Coca Cola Bottling Company (appellant) for injuries allegedly suffered by her on September 3, 1949, by glass from an explosion of an un-opened bottle or bottles of Cola·Cola which she was carrying in her hand in a six bottle paste board coca cola carton. The alleged explosion took place as she walked home from the grocery store known as Watson's Grocery Store, where the coca colas in question had been purchased by her. There was verdict and judgment in the amount of $3,000, for her as plaintiff in the suit and from this judgment this appeal has been taken. It is not practicable to set out the testimony in all its detail, but we will summarize the evidence sufficiently for an understanding of the case.

Mrs. Daisy Kirby Sullivan testified substantially as follows. On September 3, 1949, she was 49 years of age and worked for J. T. Flagg Knitting Company as a hemmer. She had worked for this company in this capacity for 23 years. At about six o'clock on the evening of September 3, 1949, she went to Watson's Grocery Store in Florence, Alabama, which is a neighborhood grocery store located about five blocks from her home to buy some groceries. At the store she purchased a carton of six coca colas and two loaves of bread and then began to walk home. Mrs. Alma Darby, a clerk in the store, waited on her and at her request picked up a paste board carton with metal handle marked with the name Coca Cola containing six bottles of uniced coca cola from the floor of the grocery store and delivered them to her by placing them on the counter in front of her. In so delivering the carton of coca colas to Mrs. Sullivan, the carton did not strike any object. In fact the clerk did nothing except place the carton on the counter as aforesaid.

Mrs. Sullivan thereupon picked up the carton of coca colas by the metal handle with her left hand and left the store en route to her home. In her right hand she had two loaves of bread in a sack. According to her while walking in a moderate manner she carried the carton of coca colas in the same manner in which they had been picked up, that is by holding the metal handle in her left hand with her arm extended in a normal manner. There was nothing unusual about the appearance of the carton and the carton was not struck against anything. She testified that she handled the six bottle carton of coca colas very carefully and that nothing happened with reference to the same until she had almost reached her home. As she was walking along and when she was about three-quarters of a block from her home, she heard a loud noise that sounded like an explosion and momentarily she felt a sting and pain in her left leg. She looked down and saw that her leg was bleeding and that the carton had partially disintegrated and that the bottles were on the concrete sidewalk with at least four of them broken. She screamed and a Mr. Lambert and a Mr. Fielder came to her assistance. She laid down and Mr. Lambert tied her scarf around her leg above the injury. She received a cut on her left leg just above the heel on the tendon which is called the "Achilles Tendon" from a part or parts of a broken bottle or bottles.

Mrs. Sullivan was immediately driven to the hospital in an ambulance and was treated by Dr. Wyatt Simpson, who sewed up the cut on her leg. She stayed in the hospital for five days and after she returned to her home, she was required to stay in bed for a week. She was forced to use crutches for about six weeks and because of her inability to use her foot and leg she was unable to work for a period of about seven weeks following the accident. According to her she suffered pain from the injury, her leg swells and she continues to suffer pain as a result of the injury, and

she has particular difficulty and discomfort in the use of her foot and her leg when she tries to walk down steps. According to her she still has swelling in her leg and continues to suffer pain, particularly at night. She showed to the court and the jury a scar on the back of her left leg above her heel about 2½ to 3 inches.

In the operation of the hemming machine Mrs. Sullivan has to use both feet and both legs and as a result of the injury she cannot use her left foot and leg as efficiently as she could prior to the accident. She knows no other kind of work and has been performing the same job for about 23 years. She works on a piece rate basis or in other words she is paid by the number of garments hemmed. While prior to her injury she was able to complete some 30 to 32 bundles per day of completed garments, as a result of her injury she can only complete about 26 or 27 bundles per day. In addition to the foregoing Mrs. Sullivan incurred a hospital bill, doctor's bill and other medical expenses.

Mrs. Alma Darby was a clerk in the Watson's Grocery Store at the time of the alleged accident and made the sale of the carton containing six coca colas to Mrs. Sullivan. Her testimony shows that she picked the carton of coca colas off the floor, the coca colas already being in the carton on the floor near the ice box and when she thus picked the carton up, she gave the same to Mrs. Sullivan. According to her so far as she was aware the bottles were in the same condition when they were delivered to the plaintiff as when they were delivered to Watson's Grocery Store. None of the six bottles of coca cola had been under refrigeration. The temperature in the store was not overheated but comfortable and the bottles had not been handled in any way. According to her further, the bottles were dry, the floor was not damp and the floor had no cracks in it. She noticed no defect or unusual condition of the bottles of coca cola at the time she sold them to the plaintiff and she stated that the coca colas were in the carton just like they were delivered to the store when she handled them and handed them to the plaintiff. She further

testified that the coca colas which were sold to Mrs. Sullivan had not been moved while in the store and that no one in the store had in any way handled the carton of coca colas prior to the time it was sold to Mrs. Sullivan.

L. E. Watson, proprietor of Watson's Grocery Store, testified that he sold coca colas in his grocery store and all the coca colas were purchased from the defendant, including those sold to Mrs. Sullivan. While he could not say positively that the coca colas sold to Mrs. Sullivan had been delivered to the store on the day of sale he did testify that the coca colas were either delivered on the day sold plaintiff or within two or three days of that time. Deliveries of the coca colas by the defendant to Watson's Store were made in a truck, the coca colas were taken out of the truck and carried into the store by defendant's employee and by such employee stacked or placed in the store. He testified that no one in any way moved or mistreated the coca colas and the only times they were touched were when they were sold or when some were taken out of crates. While he could not state the exact degree of temperature inside his store on September 3, 1949, he did say it was a little cooler inside his store than it was on the outside. The heater in the store was not in operation or burning at the time and when stating that it was a little cooler in the store, he said, "Well, the sun was not shining inside and we have fans which would drop the temperature a few degrees."

There was no air conditioning system in the store and while he could not remember whether September 3, 1949 was a damp day or not, he testified that if it was a damp day his store would not be any more damp than any other normal store. No water had been poured on the floor of his store and no bottles of coca cola which had been in the cooler had been removed and put back in cartons.

According to the testimony of J. R. Lambert, he was across the street at the time the accident happened walking in the opposite direction. When he saw Mrs. Sullivan and spoke to her, he noticed that

she was carrying the carton of coca colas in question in her left hand with her arm extended at normal length. After speaking to her he turned his head and then heard an explosion. Upon hearing the explosion he looked toward Mrs. Sullivan again and saw bottles falling from the carton to the sidewalk and heard other explosions. He immediately went to her and saw that she had a hole in her leg or was bleeding. He told her to sit down and then called for an ambulance. According to him Mrs. Sullivan was carrying the carton in a normal manner and the explosion sounded like a gun.

According to the testimony of Roy Fielder he was walking down the street on the day when Mrs. Sullivan was injured and saw her walking on the opposite side of the street, carrying the carton of coca colas. He heard a noise which sounded like a gun and saw the coca colas falling out of the carton toward the sidewalk. He immediately went to Mrs. Sullivan and recalled that Mr. Lambert tied a scarf around her. leg. She was bleeding when he reached her and an ambulance came to take her to the hospital.

Nolan Phillips testified that he was the route salesman for the defendant, who delivered the coca colas to Watson's Grocery Store for a considerable period of time including September 3, 1949, the date in question. There was a wire rack in the store and he set the cartons on this wire rack. The wire rack held about two cases of coca colas. If the coca colas were sold from behind the ice cooler on September 3, 1949, he did not know who placed them there. He did not put cartons behind the ice cooler while he was making deliveries to the store in question. The coca cola bottling company furnished the wire racks. It was customary to rotate a stock and put the new cartons under and put the old ones on top to sell first to keep them from getting dusty and looking bad.

Walter Bell, the General Manager or Superintendent of the defendant, testified that his company bought the cartons from an approved manufacturer in which they placed the six bottles of coca cola and which they then distributed to their customers. He had never seen a bottle of coca cola explode provided the bottle is put to proper use. If the bottle is in any way inferior, there is a possibility of explosion, but that, in his opinion, just putting one on the table if you put it to normal use would not explode it. Occasionally there are cracked bottles and if the bottle passes the inspector and is cracked then it may explode. Some bottles do explode in the process of being charged and in that way weak bottles are eliminated.

William Peck testified that he was the Assistant Bottler for the defendant company and he detailed the operation of the coca cola plant. In brief his testimony showed as did Walter Bell, the plant manager, that the defendant did not manufacture any machines, bottles or anything used in the product. Everything was bought from outside sources approved by the National Coca Cola Company. The method of bottling was fully described. His evidence and that of Walter Bell showed that the process of bottling the drink was done in a modern and efficient manner and with modern equipment.

There was also testimony tending to show that the sidewalk over which the plaintiff walked when she was carrying the coca colas from the store to her home was rough and cracked in places and photographs were introduced in evidence to substantiate this testimony.

I. A number of assignments of error relate to the defendant's request for the affirmative charge, which was refused by the court. The case was submitted to the jury on counts 1 and 3 the alleged negligence being, in substance, that the defendant was engaged in the preparation, sale, distribution and bottling of a beverage known as coca cola and in connection therewith containers or cartons made of paper were distributed or sold with the beverage, after being so prepared and bottled, to merchants to be sold by them at retail for the purpose of human consumption as a beverage. The allegations show that bottles of this beverage in such a container or carton were purchased and received by a merchant named L. E. Watson, doing business as Watson's Grocery Com-

pany and in turn one of these cartons with the bottles therein was sold and delivered to the plaintiff on or about September 3, 1949, to take to her home for her handling and consumption. The allegation is then made that the bottles of the beverage placed in the carton were unsuitable and unfit in a reasonable manner for human handling by reason of the bottles being explosive and while plaintiff was carrying a carton of the bottles in the carton or container to her home one or more of the bottles exploded and as a proximate result of the defendant's negligence, the plaintiff was injured by parts of the broken bottle. After a statement of the damages alleged to have been suffered by the plaintiff, count 1 then contains the following allegations: "Plaintiff further alleges that said bottles of said beverage were not improperly handled or subjected to any unusual atmospheric or temperature changes between their delivery by the said agents, servants, or employees of the defendant company to L. E. Watson, doing business as Watson Grocery Company, up to and including the time of the explosion alleged above."

Count 3 is substantially similar to count 1 except that in addition to the allegation as to the explosive character of the bottles, the negligence of the defendant is also laid in the unsuitable and unfit condition of the paper container or carton in which the bottles were delivered to the plaintiff. Count 3 contains the following allegation: "The plaintiff further alleges that said bottles of said beverage and said container or carton were not improperly handled, subjected to any unusual atmospheric or temperature changes, or broken or torn between their delivery by the agents, servants, or employees of the defendant to L. E. Watson, doing business as Watson Grocery Company, up to and including the time of the explosion of one or more of said bottles simultaneously with the breaking, disintegration or coming apart of the said container or carton as alleged above."

It is insisted by the appellant that the evidence shows that the carton with the six bottles of coca cola in it were not un-der the management and control of the defendant at the time of the accident and since there is no proof of any specific act or negligence on the part of the defendant, the defendant was entitled to the affirmative charge. So far as we are aware this court has not passed on what might be termed a bursting bottle case in litigation of this general character. However, the principle has been before this court where bottlers and other manufacturers have been held liable in what might be referred to as "foreign substance cases," after the instrumentality that caused the injury had passed from the control and management of the defendant. We refer for example to Ballard and Ballard Company v. Jones, 246 Ala. 478, 21 So.2d 327 and Dr. Pepper Co. v. Brittain, 234 Ala. 548, 176 So. 286.

In the case of Ballard and Ballard Company v. Jones, supra, the defendant, a manufacturer of flour, was sued for injuries sustained by the plaintiff in eating biscuit made out of flour purchased from a retail grocery store in a sealed sack manufactured by the defendant for the purpose of selling his flour to the public. The plaintiff bought the flour in the original sack, brought it home, opened the sack and put the flour in a bin. Biscuits were made from the flour which plaintiff claimed produced her illness. According to the evidence tests were made which showed that flour in the plaintiff's possession contained arsenic. The defendant, just as in the case at bar, produced evidence of its manufacturing processes and contended that its evidence presented a complete defense and overcame the presumption of negligence when arsenic in deleterious quantities was found in the flour and therefore the defendant was entitled to a directed verdict. This court said [246 Ala. 478, 21 So.2d 330]:

"While it may be conceded that the repeated tests made of the flour while it was going through the mixer authorized an inference that the mixing apparatus was in good condition and without defects, the drawing of such inference was within the province of the jury. There was no affirmative evidence that it was free of defects.

The burden to show this was on the defendant, because of its superior knowledge in respect thereto."

See also Dr. Pepper Co. v. Brittain, supra.

The case of Groves v. Florida Coca-Cola Bottling Co., Fla., 40 So.2d 128, 129, is applicable to the discussion here. In that case the Florida Court said:

"The record shows that the appellant failed to submit any direct evidence of negligence on the part of Florida Coca-Cola Bottling Company. The question for decision is whether such evidence as was adduced was sufficient to invoke the application of the rule res ipso loquitur under which direct proof of active negligence is not indispensable in order to place on the manufacturer of bottled beverages the burden of explanation or rebuttal."

The proposition was advanced in · the foregoing case that the manufacturer of bottled beverages should not be held for injuries resulting from the explosion of the bottle containing the beverage after it had passed from the possession and control of the manufacturer. But the court said in effect that after the bottle left the possession and control of the bottler it was not subject to any unusual atmospheric changes in temperature such as might have been reasonably calculated to render the bottles defective or otherwise cause an explosion. In this connection the Florida Court said:

"While it is true that the law requires an affirmative showing to be made by the injured party that due care was used in the handling of a bottled beverage after it has left the possession and control of the manufacturer before the rule of res ipsa loquitur will be applicable, the law does not require that the injured person eliminate each and every remote possibility of injury to the bottle up to the time of the explosion. It is enough if the evidence is such as to permit a reasonable inference in light of all the circumstances that the bottle was not accessible to extraneous harmful influences after it left the possession of the bottler and

that it was handled in a reasonably careful manner by the injured person and others who may have had reason to move or touch it. Compare Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436. When such evidence has been produced a prima facie case of negligence has been established sufficient to place the burden on the manufacturer of rebutting the presumption raised by the evidence that the explosion was the result of some defect in the bottle, improper charging or mixing of its contents, or negligent manner in its handling while in the possession and control of the manufacturer. Compare Payne v. Rome Coca Cola Bottling Co., 10 Ga.App. 762, 73 S.E. 1087; Lanza v. De Ridder Coca Cola Bottling Co., La.App., 3 So.2d 217; Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 677; Stolle v. Anheuser-Busch [Inc.], 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001; Counts v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 149 S.W.2d 418."

The Court of Appeals of Louisiana dealt with the subject of a bursting bottle in the case of Lanza v. De Ridder Coca Cola Bottling Co., 3 So.2d 217, 218. There was a judgment for the plaintiff and in affirming the judgment the Louisiana Court said:

"The plaintiff having proved that the bottle was not improperly handled after it left the possession of the defendant company, the presumption arises, that, if there were any defects in the bottle or if there was an overcharge of gas in the bottle, this fact would be more within the knowledge of the defendant than that of the plaintiff. With this proof, plaintiff made out a prima facie case of negligence against the defendant as it must be assumed that a bottle will not explode when properly handled unless there is some defect in the bottle or improper charging or mixture of the contents."

At this point it is worth while to compare the decisions of the Florida and Louisiana Courts with the Alabama decisions mentioned above. These authori-

64

ties show that the defendant was not entitled to the affirmative charge even though the article had passed from the control of the defendant.

Reference is made to the annotation published in 4 A.L.R.2d 466. This annotation sums up the development of the law in respect to the application of res ipsa loquitur to bursting of bottled beverages, food containers, etc. An examination shows that the general trend is in the direction taken by the Georgia Courts. Reference is here especially made to the case of Payne v. Rome Coca Cola Bottling Co., 10 Ga.App. 762, 73 S.E. 1087. The theory of the later cases is that the control required over the thing causing the injury under the doctrine of res ipsa loquitur does not refer to control at the time of the injury but to control at the time of the alleged negligent act. It should be borne in mind, however, that this theory requires the introduction by the plaintiff of affirmative evidence permitting a reasonable inference that the article was not the subject of extraneous harmful forces and that it was carefully handled by all parties subsequent to the time it left the management and control of the bottler. See Escola v. Coca Cola Bottling Co., 24 Cal. 2d 453, 150 P.2d 436; Hughes v. Miami Coca Cola Bottling Co., 155 Fla. 299, 19 So.2d 862; Soter v. Griesedieck Western Brewery Co., 200 Okl. 302, 193 P.2d 575, 4 A.L.R.2d 458; Stolle v. Anheuser-Busch, Inc., 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001.

The allegations of count 3 show that "while plaintiff was carrying said bottles in said container to her home one or more of said bottles exploded and said container or carton disintegrated or came apart simultaneously with said explosion of said bottles." The plaintiff and the men who were near the scene of the accident described what they saw and what they heard. This testimony admits of the inference that the alleged events did occur simultaneously. It could be that the explosion caused the carton to disintegrate. Certainly the allegations of count 3 are not weakened by reference to the carton and proof of the allegations is not lacking.

140 A.L.R. 214; Healey v. Trodd, 122 N.J.L. 603, 7 A.2d 640; Id., 124 N.J.L. 64, 11 A.2d 88. There was evidence tending to show that the carton had not been impaired by extraneous harmful influences and was carefully handled after it left the possession and control of the defendant.

■ It is further argued that under the proof the defendant was entitled to the affirmative charge for the reason that the plaintiff stumbled on a crack in the concrete sidewalk on which she was walking and that she did not deny stumbling. However, under the evidence, this was a question of fact for the jury. She testified that she handled the six bottle carton of coca colas very carefully and the explosion occurred while she was walking in a moderate manner and holding the carton of coca colas in a normal manner.

It is argued that the defendant was entitled to the affirmative charge because the plaintiff did not meet the burden of proof imposed on her to show that after the bottled beverages left the defendant's possession they were not subjected to any unusual atmospheric changes or sudden changes in temperature and that they were not handled improperly up to the time of the alleged explosion. This issue under the evidence was a question of fact for the jury. 4 A.L.R.2d 474.

We consider that there was sufficient evidence adduced in the case at bar to establish reasonable and proper handling of the six bottles of coca cola and the carton involved to carry the case to the jury.

■ II. There are assignments of error which pertain to the overruling of objections filed to certain interrogatories and the answers made thereto by Mrs. Alma Darby. Her testimony was taken by deposition. The argument appears to be that the knowledge of the witness was insufficient on which to base her testimony. Such cases as Birmingham Ry., Light & Power Co. v. Barrett, 179 Ala. 274, 60 So. 262, are cited to the general proposition that knowledge of a witness in a matter is not presumed, so that knowledge must be shown before the witness may testify in the matter. In the case before us Mrs. Darby showed that she was a clerk in the

Watson Grocery Store and had the opportunity to observe the coca colas and the carton in question. It was not necessary, in order to qualify her as a witness, to show that she continuously observed the coca colas and carton in question from the time they were delivered by the company to the Watson Grocery Store in order to be competent as to what she there observed. Where an opportunity for observation is shown, even though slight, a witness should be considered competent to testify as to what she or he observed and the weight of such testimony is for the jury. Alabama Power Co. v. Farr, 214 Ala. 530, 108 So. 373; Gladden v. State, 256 Ala. 368, 54 So.2d 610.

III. Assignments of error are based on exceptions to the oral charge. The oral charge has been read with great care and considered in conference. We have especially considered it in connection with the argument that it shows that the burden of proof shifts to the defendant after the plaintiff made out a prima facie case. The oral charge, however, should be considered in its entirety and a few words should not be taken out of their context in order to give them a meaning that might be different if the entire charge is considered. We are satisfied that the oral charge when considered as a whole, shows that it was a fair and correct statement of the applicable rules of law. Under the authorities in this state, it is true that in a case of this kind when a deleterious substance is found in the bottle or article sold to the public for consumption, the burden rests on the defendant to go forward with the evidence and exonerate itself from responsibility. Otherwise the prima facie case of the plaintiff will prevail. The burden of proof, however, throughout the trial of the case rests on the plaintiff to show that his injuries are the proximate result of negligence on the part of the defendant. Collins Baking Co. v. Savage, 227 Ala. 408, 150 So. 336; Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257. In the charge in the present case the court charged that where a prima facie case of negligence has been established, this casts on the defendant the burden to refute the presumption that the explosion arose from such defect or some negligence in the manufacture, preparation or handling by the defendant. The court then said: "Now, Gentlemen, before that duty under the law—before that burden of proof under the law shifts to the defendant, the court would like to point out, that before that duty devolves upon the defendant of going forward with its evidence, the plaintiff must make an affirmative showing to you from the evidence that after the bottle left the control of the bottler, it was not subjected to any unusual atmospheric changes or changes in temperature which might be reasonably calculated to render the bottle defective and also cause the explosion and that it was not improperly handled or tampered with from the time it left the defendant-company, until the time of explosion." When the charge is taken as a whole, it clearly shows that the burden of proof to which the court refers is the duty which devolves upon the defendant of going forward with the evidence. We find no error in the charge.

IV. It is argued that the court was in error on the motion for a new trial in sustaining objections made by the plaintiff to questions propounded to the jurors in an efford to show that during the deliberations of the jury one of the jurors made a statement to the other jurors about an exploded bottle. It is clear however that under the authorities in this state jurors may not testify to facts which tend to impeach their verdict although their testimony is admissible to sustain their verdict. Fortson v. Hester, 252 Ala. 143, 39 So.2d 649; Clay v. City of Montgomery, 102 Ala. 297, 14 So. 646; Van Tinder v Birmingham Railway, Light & Power Co., 202 Ala. 474, 80 So. 858; Mobile & Ohio R. R. Co. v. Watson, 221 Ala. 585, 130 So. 199.

V. We are not impressed with the contention that the verdict of the jury was excessive. In addition to medical and hospital expense and loss of earning power the proof showed physical pain and bodily injuries of a permanent nature. In Lu-

quire Funeral Homes Ins. Co. v. Turner, 235 Ala. 305, 178 So. 536, 538, it was said:

"The rule is that the amount of damages for physical pain and bodily injuries of a permanent sort, not subject to measurement by a legal standard, is largely discretionary with the jury, and that discretion will not be set aside unless so excessive as to show prejudice, passion, partiality, corruption, or some other such controlling sentiment."

There are other assignments of error but we find no merit in them and forego their discussion.

Upon consideration of the case we consider that the judgment of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.