Clarence E. LIPSCOMB and M. Blanche Lipscomb, Plaintiffs,

v.

Jeanne S. DIAMIANI, Defendant.

Superior Court of Delaware.

New Castle.

Feb. 24, 1967.

Thomas G. Hughes, Wilmington, for plaintiffs.

Morton R. Kimmel, Wilmington, for defendant.

QUILLEN, Judge.

This cause of action is based on negligence and arises out of an automobile acci-dent. In the pre-trial order of January 12, 1967, the Court recognized a defense mo-tion to amend her answer to include "a second affirmative defense, failure of plaintiffs to wear seat belts". Actually only the plaintiff wife was injured and thus the proposed amendment goes only to her conduct.

On February 15, 1967, counsel for the defendant provided the Court with a letter memorandum in support of the proposed amendment, citing Sams v. Sams, 247 S.C. 467, 148 S.E.2d 154 (April 26, 1966) and Mortensen v. Southern Pacific Company, 53 Cal.Rptr. 851 (Cal.App. Sept. 28, 1966).

On February 20, 1967, counsel for the plaintiffs responded and prayed that evi-dence of the failure to use available seat belts not be permitted at trial, citing Brown v. Kendrick, 192 So.2d 49 (Fla.App. Nov. 17, 1966), Kavanagh v. Butorac, 221 N.E.2d 824 (Ind.App. Dec. 12, 1966), and Rogers v. Race and Bierczynski, 141 C.A. 1966 (Del. Super.—Memorandum Judge Christie Feb. 17, 1967).

Judge Christie's holding in the *Rogers* case barred any evidence as to seat belts "in the absence of expert testimony as to which injuries might have been avoided if the seat belt had been fastened". He did not there reach "the issue of admissibility of such evidence if an accident expert were offered". The seat belt evidence was of-fered only under the rule of avoidable con-sequences and not as a form of contribu-tory negligence.

Upon learning of the decision of Judge Christie, counsel for the defense, at a pre-trial conference held on February 21, 1967, said he would obtain the services of an ex-pert as required by that opinion. Since trial was scheduled for March 1, 1967, de-fense counsel was faced with an extremely urgent time problem, not of his own mak-ing. Good reasons exist why the case, which was originally listed for trial by the plaintiffs during the September 1966 term

and was continued by mutual agreement of counsel at the time set for pre-trial, should not be continued again, especially in view of the plaintiffs' objection to such a continuance. The plaintiffs also continue to object to the admission of any evidence of their failure to use available seat belts. An immediate pre-trial determination of seat evidence question therefore was requested and is desirable.

The defendant, in the letter of February 15, 1967, argues that evidence of seat belts is admissible both for purposes of contributory negligence and of avoidable consequences. Ignoring certain unresolved practical problems from the defense point of view, and stating the question most favorably to the defendant, the defendant in effect offers testimony, through an "accident expert", tending to prove that, if the plaintiff had used the available seat belts, she would not have been injured or would not have been injured to the extent that she was. This is the Court's decision on the offer of proof.

It is important to analyze what the four cited cases from other jurisdictions hold.

In Sams v. Sams, supra, at 148 S.E.2d 155–156, the South Carolina Supreme Court held that a contributory negligence pleading based on the failure to use available seat belts should not have been stricken on a pre-trial motion to strike. No opinion was given on the ultimate questions raised by the defense, but it was merely decided that such questions could "be decided much more soundly, in the light of all the facts and circumstances adduced upon the trial".

In Mortensen v. Southern Pacific Company, supra, at 53 Cal.Rptr. 853, the California District Court of Appeal, in a Federal Employers Liability Act case, concluded "that it was for the jury to decide whether defendant's failure to provide seat belts amounted to negligence" by the employer in failing to supply the driver of a pickup truck with a safe place to work.

In Brown v. Kendrick, supra, at 192 So.2d 50–51, the Florida District Court of Appeal upheld the granting of a motion to strike the defense of contributory negligence based on the failure to use an available seat belt and said "that the trial court was not in error in refusing to allow the defendant to offer to the jury evidence of the plaintiff's failure to use the seat belt". The Court also indicated that such evidence was only conjecture. It should be noted that the defendant evidently submitted a newspaper editorial as an attachment to the pleading and perhaps, at least in part, this rather general approach to the problem caused the Court to comment on the element of conjecture. But the case did uphold the striking of the pleading and thus supports the refusal to hear any evidence on the subject. This fact is emphasized by the Court's express refusal to follow even the limited opening of the door provided in in the *Sams* case.

In Kavanagh v. Butorac, supra, at 221 N. E.2d 831, the Appellate Court of Indiana refused to recognize "a new common law doctrine that the failure to use seat belts is contributory negligence as a matter of law". It is important to note, however, that the trial court in fact heard the testimony of a safety expert on both the issues of contributory negligence and avoidable consequences. The Appellate Court held at 221 N.E.2d 830, that the record including the expert testimony was "insufficient for use to base a remittitur because of avoidable consequences or to grant a reversal in this case". In its strictest reading then, the case stands only for the proposition that the "trial judge was at liberty to regard favorably, or to disregard utterly" the testimony of the safety expert. It is possible to read the case more broadly as questioning the avoidable consequences doctrine in the seat belt context, but basically the Court merely refused to apply the doctrine "as a matter of law".

In summary, it should be stated that, of the four, only the *Brown* case furnishes

authority for an absolute bar to receiving evidence of failing to use available seat belts. The *Sams* case and the *Kavanagh* case indicate that the particular evidence in each case must be evaluated to determine its admissibility. They thus go beyond Judge Christie's holding in the *Rogers* case and indicate positively that it is possible to adduce expert testimony of probative value which is admissible. The *Mortensen* case, in the FELA context, indicates without qualification that a jury question is presented.

This Court is precluded, by Judge Christie's thoughtful holding in the *Rogers* case, from adopting the *Mortensen* FELA standard as Delaware negligence law. At the very least, evidence of failure to use available seat belts should be pinpointed to demonstrate its probative value on the issues for which it is being offered. Of the remaining three authorities, it seems to this Court that the *Brown* case states the best rule for Delaware.

Initially, it must be noted that this Court is being asked to establish new law or at least to apply some familiar general concepts to a new specific area. There is no question that the requested change could produce decidedly different trial results. Certainly such a request comes within the great tradition of the common law. But in Delaware, unlike many other jurisdictions, the Courts have generally limited the common law duties in automobile negligence cases to two, lookout and control. Thus, for our State, the requested change from the past is more drastic than in many other jurisdictions and would have a more dramatic impact in the trial of negligence cases.

The life and death area with which we are dealing is peculiarly suited for the

legislative exploration and development. The tendered evidence has as its basis research in the field of safety based on probabilities. As the Court in the *Brown* case said at 192 So.2d 51:

"It may be that after further research by various safety committees, the law may be changed to require the use of seat belts and to affix some element of negligence for failure to use same. This is not the law today and it is not within the province of this court to legislate on the subject, regardless of what might be the thinking of the individual members of this court."

The Court is, of course, aware that there have been numerous instances when the judicial branch of government has relied on general research evidence. Perhaps, the two most telling recent examples are Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). But such cases involve broad concepts of personal liberty, usually involving the Constitution, and frequently involving a persistent failure of legislative action.[1] But the question of automobile safety is comprehensively considered in the Delaware statutory law. It is a vital and continuing concern to the Legislature. There can be little question but that the legislative forum is a better one to explore the area than the isolated courtroom. The Courts, as guardians of law, can do no greater disservice than fail to recognize the full role of the other branches of government.

It is necessary to look at the alternative to the doctrine set forth in Brown v. Kendrick, supra. If the evidence is admitted under common law doctrines, its role in the trial has to be fixed. Certainly, no court

---

1. Even in these areas the approach taken by the Supreme Court is not necessarily required. The *Miranda* case is not without its reasonable critics including four members of the Supreme Court and one may legitimately question whether the

*Brown* decision might not have better rested on the more limited basis used by Justice Harlan in his dissent in Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896).

has indicated that failure to use available seat belts is negligence as a matter of law. See Kavanagh v. Butorac, supra, at 221 N.E.2d 831. Indeed, in absence of a statute, it is difficult to see how such a position could be adopted.

The question is then one of instructions. As to contributory negligence, the Court, upon admitting such evidence, could refuse to instruct the jury specifically and merely rely on a general instruction that plaintiff was obligated to use the due care of a reasonable person under the circumstances. Or the Court could attempt to assist the jury by instructing specifically. For example, in Wisconsin, where a statute requires the installation, but not the use, of seat belts, the following instruction is used:

"In passing on the question as to whether or not ＿＿＿＿ ＿＿＿＿ was negligent, you may take into consideration the facts that the automobile was equipped with safety belts and that they were available for use by him.

You will determine, under all the credible evidence and reasonable inferences from the evidence in this case, whether the failure of ＿＿＿＿ to use the safety belt was an omission to take a precaution for his safety, and amounted, under the circumstances, to a failure on his part to exercise ordinary care for his own safety."

In either event, the jury is being advised that the standard of care in regard to seat belts varies under the circumstances. It seems to this Court that such advice is open to great question. In dealing with the normal rear-end, intersection or other collisions, how is the jury supposed to distinguish the variable standard of care? Even negligence law should not be void of standards. It is possible for reasonable men to analyze logically the variables presented by the issues of lookout and control, but it is extremely difficult to analyze the variables presented in failing to buckle a seat belt upon entering an automobile for normal, everyday driving. To ask the jury to do so is to invite verdicts on prejudice and sympathy contrary to the law. It is an open invitation to unnecessary conflicts in result and tends to degrade the law by reducing it to a game of chance. The same problem is presented as to the doctrine of avoidable consequences.

Moreover, the introduction of such evidence under the rule of avoidable consequences would interject into a large number of simple two party cases the complication of damage apportionment. It is difficult enough to deal with damage apportionment in the joint tortfeasor area where damages are traced to the negligence of each tortfeasor to the extent reasonable, jointly shared by both to the extent no reasonable apportionment can be accomplished, and the joint share split, as between the two, in accordance with fault. Not only is the problem difficult, but it has other implications. Assume that the trier of fact finds that the plaintiff's failure to use seat belts did aggravate the injuries, but cannot reasonably separate the injuries caused by the defendant and the self-imposed negligent aggravation of the plaintiff. According to Dean Prosser's analysis of the rule of avoidable consequences, "[i]f no such division can be made, the plaintiff's negligence will bar all recovery, notwithstanding that it is subsequent in point of time to that of the defendant". Prosser, Law of Torts, (3d ed.) § 64, p. 433. This result occurs notwithstanding the fact that the defendant's negligence was the sole proximate cause of the accident. This Court is not convinced that the extension of the doctrine of avoidable consequences to the seat belt situation is desirable. Indeed, the seat belt situation does not fit neatly into the doctrine at all because the alleged negligent act happens before any injury.

Furthermore, this Court is troubled generally by the concept of failing to use available seat belts. As noted above, a seat belt is a relatively new safety device, the use of which is not required by statute although

the area of safety is comprehensively covered. Seat belts are not likely to be the last new safety device. The precedent as a matter of common law is thus somewhat disturbing. It is also disturbing to the Court that some cars duly registered by the State do not have any seat belts. Some cars have front seat belts. Why should the whole burden of a reasonable standard of care fall on the person who has seat belts but fails to use them?

There is also the problem of conjecture mentioned in the *Brown* case, supra. Conjecture is a dangerous term often used to describe a pre-conceived notion. Certainly, the trier of fact deals with questions similar to the ones introduced by seat belts in dealing with proximate cause and future damages. But at least in such instances, the judgment deals with what did in fact happen or what is reasonably probable to happen. In the seat belt area, we are dealing with what would have happened, insofar as the extent of injury is concerned, if the seat belt had been used as well as what happened due to failure to use the seat belt. I am not saying that this involves a qualitative difference from other trial questions. But it does seem to me that it involves an extreme extension of judgment which is required to be reasonable. This is especially true when one bears in mind that it is highly likely that expert testimony concerning the use of a seat belt can be adduced in unusual cases to support the argument that such use had a harmful result. This Court is not prepared to say that the problem which has been labeled "conjecture" can be lightly dismissed.

Finally, there are traditional tort doctrines which may be limited in some way if such evidence is admissible. As Judge Christie noted in the *Rogers* case, the failure to anticipate another's negligence is not negligence such as to defeat recovery for injury sustained. Levine v. Lam (Del.

Sup.Ct. 1966), 226 A.2d 925; Robinson v. Meding, 2 Storey 578, 163 A.2d 272 (Sup.Ct. 1960). Moreover, once the element of injury proximately caused by the defendant's negligence is introduced, it is traditional that the defendant take the plaintiff as he finds him and that recovery is personal. Moreover, there may be other tort doctrines which could be affected, such as last clear chance. In short, the full impact of the seat belt question has not been fully explored to the satisfaction of this Court.

As a consequence of the foregoing, this Court denies the admission of evidence on the failure to use available seat belts. In so doing, this Court recognizes fully that the problem is not without analytical difficulty. The Court also recognizes that some of the problems discussed above and similar proximate cause problems would exist if a statute is enacted. But the whole of the foregoing comments appear to this Court as being greater than each isolated reason. I am satisfied that the case against the offer of evidence is the better one.

Since it is desirable to have each decision rest on as narrow a basis as possible, this Court reiterates its prime concern is the absence of a meaningful standard for judgment by the trier of fact. Everything does not have to be grey and a matter of balancing; some questions, such as stop signs and red lights, lend themselves to clear black and white determinations. In this Court's judgment, the question of the use of seat belts is best resolved by a fixed standard. An occupant of a car involved in normal, everyday driving should either be required to wear a seat belt or he should not. That determination should be left to the distinguished members of our State Legislature.

The motion to amend the answer is denied. It is so ordered.