242 So.2d 666

Kenneth James BRITTON and Leonard A. Jackson

v.

Barbara Ann DOEHRING.

8 Div. 317.

Supreme Court of Alabama.

Sept. 17, 1970.

500

Bell, Richardson, Cleary, McLain & Tucker, and James H. Porter, Huntsville, for appellant Kenneth James Britton.

Humphrey, Lutz & Smith, Huntsville, for appellee.

Lanier, Shaver & Herring, and John M. Heacock, Jr., Huntsville, for appellant Leonard A. Jackson.

**BLOODWORTH, Justice.**

On original submission this case was assigned to another justice of this court. It was recently re-assigned to the writer.

This is an appeal from a $5,000 judgment for plaintiff based upon a jury verdict against the defendants on a wanton count in passenger's suit arising out of an automobile collision.

The primary issues presented are: whether appellant Leonard Jackson's request for the affirmative charge on the wanton count . was properly refused; whether appellant James Britton's motion for new trial grounded on the insufficiency of the evidence to sustain the verdict was properly overruled; and, whether evidence that the plaintiff was not using an available seat belt was admissible in reduction of damages. Other issues presented by argued assignments of error will appear and be treated below. Having resolved these issues in favor of appellee, we hold this case should be affirmed.

The suit arose out of a collision between a car driven by Leonard Jackson and a car driven by James Britton, in which plaintiff Barbara Doehring was riding. The collision occurred on a residential street in Huntsville at approximately 8:30 a.m., on January 31, 1966. The temperature at the time was between 2 and 7 degrees above zero, and the street was completely covered with ice and snow. At the point of collision the two cars were moving in opposite directions and were so positioned that their left front fenders came into contact. The collision occurred just as Britton's car emerged from an opaque cloud of vapor emitted from the exhaust of a car parked near the street and just before Jackson's car reached this cloud of vapor.

The standard by which we review the trial court's action in overruling defendant's motion for new trial grounded on insufficiency of the evidence, and in refusing to grant defendant's requested affirmative charge are similar, though the former is more rigorous.

■ "The rule in this state is that in civil cases the question must go to the jury if the evidence or the reasonable inferences arising therefrom furnish a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla, in support of the theory of the complaint. Alabama Great Southern Ry. Co. v. Bishop, 265 Ala. 118, 89 So.2d 738, 64 A.L.R.2d 1190.

"And we have said that when the affirmative charge is refused and the party who requested the charge appeals, we review the tendencies of the evidence most favorable to the opposite party regardless of any view we may have as to the weight of the evidence; and must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. (Citations omitted) * * *" Alabama Power Company v. Scholz, 283 Ala. 232, 237, 215 So.2d 447, 450.

And we have said that the decision of the trial court refusing to grant a new trial on the ground of insufficiency of the evidence will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. Southern Ry. Co. v. Reeder, 281 Ala. 458, 204 So.2d 808 (1967); Randolph v. Greason, 275 Ala. 89, 152 So.2d 156 (1963).

"Wantonness has been defined as the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. * * *" Graves v. Wildsmith, 278 Ala. 228, 231, 177 So.2d 448, 451 (1965). It has also been said that knowledge need not be shown by direct proof but may be shown by adducing facts from which knowledge is a legitimate inference. Lewis v. Zell, 279 Ala. 33, 36, 181 So.2d 101 (1965).

From the facts, that the street was 24 feet wide with shoulders 2 feet wide, that the cars collided while traveling in opposite directions, and that each defendant testified that he thought he was driving in the proper lane, it is a legitimate inference that one or both defendants' cars were traveling in the wrong lane of traffic.

Taking the tendencies of the evidence most favorable to the plaintiff, it appears that defendant Britton (his car unequipped for snow and ice-covered streets), while driving at approximately 45 miles per hour on an apparently well-traveled street so iced over that neither its center line nor shoulders were visible, proceeded into a cloud of vapor which completely obscured his vision of the road ahead; it further appears that defendant Jackson, driving (with chains on his rear tires) at a lesser speed of 20 miles per hour but otherwise under the same hazardous conditions as Britton, continued at the same speed to the very edge of the same opaque cloud of vapor. We think this evidence is sufficient to sustain the trial court both in its refusal of appellant Jackson's request for the affirmative charge and in its overruling of appellant Britton's motion for new trial grounded on insufficiency of the evidence. Since the latter ruling is the basis for appellant Britton's only argued assignments of error, as to him, the judgment is due to be affirmed.

Appellant Jackson argues as reversible error the giving of plaintiff's written charge No. 7:

"Wantonness may arise from knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger the defendant brings on the disaster."

He contends that this charge permits the plaintiff to recover on a showing of something less than proximate cause in stating "the defendant brings on the disaster."

The language of this charge is taken almost verbatim from the opinion of this court in Fortson v. Hester, 252 Ala. 143, 146, 39 So.2d 649 (1949). See authorities there cited. We have said the fact that a charge is taken almost verbatim from one of our decisions does not necessarily mean

it is proper for the court to give it. Hatcher v. Camp, 279 Ala. 475, 481, 187 So.2d 232 (1966).

■ Nevertheless, we are not persuaded by appellant's argument that giving this charge conveyed to the jury the erroneous notion that plaintiff did not have to prove proximate cause but could recover on something less. Moreover, the court's oral charge, as well as other given written charges properly instructed the jury as to proximate cause.

■ Appellant Jackson assigns as error the admission of testimony by officer Kirkpatrick, a police officer who investigated the accident, as to the position of the cars on the street when he arrived at the scene of the collision. He contends that other testimony by officer Kirkpatrick, indicating he could not ascertain the position of the center line or the shoulders of the street, demonstrates that this testimony is based upon an inadequate opportunity to observe and thus constitutes opinion evidence.

■ However, we have held that where there is an opportunity to observe, though slight, a witness may testify as to what he observed, and the circumstances attending his observation merely go to the weight of the evidence, which is, of course, for the jury. Florence Coca Cola Bottling Co. v. Sullivan, 259 Ala. 56, 65, 65 So.2d 169 (1953); Gladden v. State, 256 Ala. 368, 369, 54 So.2d 610 (1951).

■ The same authorities and reasoning dispose of appellant Jackson's contention that his motion to exclude defendant Britton's testimony ("To the best of my knowledge I was on my side of the road"), was erroneously overruled since Britton also testified that he did not know on which side of the road the collision occurred.

■ Appellant Jackson further assigns and argues as error the trial court's sustaining plaintiff's objection to the following question asked on cross-examination of officer Albright, one of the investigating officers:

"Q. And so the debris and the path of it would be dependent on the facts that I have named, that is, the speed, and the conditions of the road, and the type cars and the force between the automobiles?"

However the following colloquy demonstrates that substantially the same question had previously been asked of the witness and answered by him without objection:

"Q. That debris and the location of it is dependent upon the speed of the vehicles as they came together, which one had the debris or the parts knocked from it, if there was some—all those factors are a part of the amount of debris and the area of the debris, are they not?

"A. Well, I don't know. I am not a traffic expert. I was never sent off to any school or anything, but there was debris on the road."

In our view, this renders the error, if any, harmless. Revised Rules of the Supreme Court of Alabama, Rule 45, 279 Ala. XXI, XLI.

■ Appellant Jackson also argues for reversal the trial court's refusal to give this written charge which he requested:

"The Court charges the jury that the burden of proof in this case rests upon the plaintiff, Barbara Ann Doehring to reasonably satisfy you from all the evidence that the defendant, Leonard A. Jackson was guilty of wanton misconduct in the operation of his automobile on the time and occasion complained of and that the injuries and damages of which the plaintiff complains were the proximate result of any wantonness of the defendant, Leonard A. Jackson in the operation of his automobile, and if your minds are left in a state of speculation

or conjecture at most as to whether the defendant, Leonard A. Jackson was guilty of wantonness in the operation of his automobile on that time and occasion or whether the injuries and damages of which the plaintiff complains were the proximate result of any such wanton misconduct on the part of the defendant, Leonard A. Jackson, then you cannot return a verdict in favor of the plaintiff and against the defendant, Leonard A. Jackson under the charges against him in Count I of the amended complaint."

In a number of cases, this court has condemned charges predicated on the jury's finding for defendant if their minds are left in a "state of doubt and confusion." Nelson v. Lee, 249 Ala. 549, 560, 32 So.2d 22 (1947); Allen v. Birmingham Southern R. Co., 210 Ala. 41, 97 So. 93 (1923); see also cases in Alabama Digest, Trial, Key 237(1) (3).

■ The vice in such charge is that it "placed too high a degree of proof upon plaintiff." Nelson v. Lee, supra. The degree of proof required is, of course, to reasonably satisfy. We think this charge is subject to the same vice and that there was no error in refusing it.

■ Appellant Jackson's argument under assignment of error No. 33 amounts to a mere assertion of error in overruling his motion for new trial, adding nothing to the assignment itself. Since it is not substantially argued it falls within the rule that assignments of error not substantially argued in brief will be deemed waived. See Brittain v. Ingram, 282 Ala. 158, 162, 209 So.2d 653 (1968), citing Rule 9, Revised Rules of the Supreme Court of Alabama, 279 Ala. XXI, XXVI. Notwithstanding, we believe we answer all of appellant Jackson's principal contentions (made in motion for new trial) elsewhere in this opinion.

Finally, appellant Jackson urges as error the exclusion of his offer of evidence that the plaintiff had failed to use an available seat belt while aware of the dangerous driving conditions. Such evidence, appellant contends, would show that plaintiff had defaulted in her duty to mitigate damages and, to that extent, she could not recover for her injuries.

■ Appellee Doehring points out that the doctrine of mitigation of damages, frequently called avoidable consequences, applies only to a plaintiff's conduct *subsequent* to the wrongful act of the defendant; therefore, appellee's alleged negligent act—failure to fasten the seat belt—having occurred *prior* to the alleged wanton act of appellant Jackson, the doctrine of avoidable consequences does not apply.

■ Although this question is res nova in our State, we are of the opinion that the ruling of the trial court was proper and that a plaintiff's nonuse of an available seat belt is inadmissible to mitigate the damages. We thus add our say to a rapidly growing body of law characterized by a split of authority. Compare Mount v. McClellan, 91 Ill.App.2d 1, 234 N.E.2d 329 (1968) with Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65 (1968). See also "The Seat Belt Defense in Practice," published by Defense Research Institute, Inc., Milwaukee, Wisconsin, Vol. 1970, Number 6, Appendix C, for the latest collection of cases which have considered the seat belt defense. There the author lists 36 cases from Canada and the United States. We have located three more for a total of 39 cases. Two of these three cases, Clark v. State, 28 Conn.Sup. 398, 264 A.2d 366 (1970), and Miller v. Haynes, 454 S.W.2d 293 (Mo. 1970), were only very recently reported on May 30, 1970 and July 14, 1970, respectively; and the other is a Canadian case, MacDonnell v. Kaiser, 68 D.L.R.2d 104 (Nova Scotia 1968).

These 39 cases represent 18 state, 8 federal and 2 Canadian jurisdictions which have considered the seat belt defense either on the basis of contributory negligence or in mitigation of damages. Incidentally, we have been unable to find any case holding

that failure to wear a seat belt (when available) is contributory negligence per se.

We pause to note that we are not faced with the question whether nonuse of seat belts may constitute contributory negligence, since this case was tried solely on the wanton count. Nor do we express an opinion as to the effect of failure to wear seat belts in wrongful death cases. Whether there may be a distinction between such cases (where utilization of the seat belt might have prevented death) and cases of suits for personal injuries has been suggested. See Noth v. Scheurer, 285 F. Supp. 81 (U.S.Dist.Ct.E.D. New York 1968). Thus, we reserve decision on these issues.

There is only *one* case which we consider to squarely hold that failure to use a seat belt is admissible on the issue of mitigation of plaintiff's damages. Mount v. McClellan, supra,[1] Another case appears to support the proposition by way of dictum. Noth v. Scheurer, supra.

On the other hand, courts in *eight* jurisdictions have disapproved the admission of such evidence in mitigation of damages: Delaware, North Carolina, Michigan, Missouri, Oregon (a federal district court), Florida (a federal district court applying Oklahoma law), and Nova Scotia (Canada), by direct holdings and a Connecticut court by way of dictum.[1a] Courts in *ten* jurisdictions (Texas, Indiana, New Jersey, South Carolina, Louisiana, Maryland, Mississippi a federal district court), U. S. Court of Appeals, 7th Circuit, Illinois and Ohio) have discussed the issue but expressly reserved an opinion.[2]

We now refer to the basis for the decisions of other courts which have disallowed the seat belt defense in mitigation of damages.

In Lipscomb v. Diamiani, 226 A.2d 914, 917–918 (Del.Super.1967), some of the problems in admitting this evidence are discussed:

"* * * Assume that the trier of fact finds that the plaintiff's failure to use seat belts did aggravate the injuries, but cannot reasonably separate the injuries caused by the defendant and the self-imposed negligent aggravation of the plaintiff. According to Dean Prosser's analysis of the rule of avoidable consequences, '[i]f no such division can be made, the plaintiff's negligence will bar all recovery, notwithstanding that it is subsequent in point of time to that of the defendant'. Prosser, Law of Torts, (3d ed.) § 64, p. 433. This result occurs notwithstanding the fact that the defendant's negligence was the sole proximate

1. See Miller v. Haynes, 454 S.W.2d 293 (Mo.1970), in which the Missouri Court of Appeals reads the holding in Mount v. McClellan as obiter dictum.

1a. Clark v. State, 28 Conn.Sup. 398, 264 A.2d 366 (1970) (dictum); Lipscomb v. Diamiani, 226 A.2d 914 (Del.Super. 1967); Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65 (1968); Romankewiz v. Black, 16 Mich.App. 119, 167 N.W.2d 606 (1969); Robinson v. Bone, 285 F.Supp. 423 (U.S.Dist.Ct.Ore.1968); Woods v. Smith, 296 F.Supp. 1128 (U.S. Dist.Ct.Fla.1969) (applying Okl. Law); MacDonnell v. Kaiser, 68 D.L.R.2d 104 (Nova Scotia 1968); Miller v. Haynes, supra.

2. Jones v. Dague, 166 S.E.2d 99 (S.C. 1969); Sonnier v. Ramsey, 424 S.W.2d

684 (Tex.Civ.App.1968); Kavanagh v. Butorac, 221 N.E.2d 824 (Ind.App. 1966); Barry v. Coca Cola Co., 99 N.J.Super. 270, 239 A.2d 273 (1967); Cierpisz v. Singleton, 247 Md. 215, 230 A.2d 629 (1967); Glover v. Daniels, 310 F.Supp. 750 (U.S.Dist.Ct.Miss.1970); Schomer v. Madigan, 120 Ill.App.2d 107, 255 N.E.2d 620 (1970); Bertsch v. Spears, 20 Ohio App.2d 137, 252 N.E.2d 194 (1969); Fontenot v. Fidelity and Casualty Co. of New York, 217 So.2d 702 (La.App.1969); Lentz v. Schafer, 404 F.2d 516 (7th Cir. 1968). We recognize that the absence of clarity in some of the opinions leaves room for different views over the proper contents of this list.

cause of the accident. This Court is not convinced that the extension of the doctrine of avoidable consequences to the seat belt situation is desirable. Indeed, the seat belt situation does not fit neatly into the doctrine at all because the alleged negligent act happens before any injury.

"Furthermore, this Court is troubled generally by the concept of failing to use available seat belts. As noted above, a seat belt is a relatively new safety device, the use of which is not required by statute although the area of safety is comprehensively covered.[3] Seat belts are not likely to be the last new safety device. The precedent as a matter of common law is thus somewhat disturbing. It is also disturbing to the Court that some cars duly registered by the State do not have any seat belts. Some cars have front seat belts. Why should the whole burden of a reasonable standard of care fall on the person who has seat belts but fails to use them? [Note supplied]

"There is also the problem of conjecture mentioned in the *Brown* case, supra [Brown v. Kendrick, 192 So.2d 49 (Fla. App.1966)]. Conjecture is a dangerous term often used to describe a pre-conceived notion. Certainly, the trier of fact deals with questions similar to the ones introduced by seat belts in dealing with proximate cause and future damages. But at least in such instances, the judgment deals with what did in fact happen or what is reasonably probable to happen. In the seat belt area, we are dealing with what would have happened, insofar as the extent of injury is concerned, if the seat belt had been used as well as what happened due to failure to use the seat belt. I am not saying that this involves a qualitative difference from

other trial questions. But it does seem to me that it involves an extreme extension of judgment which is required to be reasonable. This is especially true when one bears in mind that it is highly likely that expert testimony concerning the use of a seat belt can be adduced in unusual cases to support the argument that such use had a harmful result. This Court is not prepared to say that the problem which has been labeled 'conjecture' can be lightly dismissed.

"Finally, there are traditional tort doctrines which may be limited in some way if such evidence is admissible. As Judge Christie noted in the *Rogers* case [Rogers v. Race and Bierczynski, 141 CA 1966 (Del.Super.—Memorandum Judge Cristie Feb. 17, 1967)], the failure to anticipate another's negligence is not negligence such as to defeat recovery for injury sustained. Levine v. Lam (Del.Sup. Ct.1966), 226 A.2d 925; Robinson v. Meding, 2 Storey 578, 163 A.2d 272 (Sup.Ct. 1960). Moreover, once the element of injury proximately caused by the defendant's negligence is introduced, it is traditional that the defendant take the plaintiff as he finds him and that recovery is personal. Moreover, there may be other tort doctrines which could be affected, such as last clear chance. In short, the full impact of the seat belt question has not been fully explored to the satisfaction of this Court.

\* \* \* \* \* \*

"Since it is desirable to have each decision rest on as narrow a basis as possible, this Court reiterates its prime concern is the absence of a meaningful standard for judgment by the trier of fact. Everything does not have to be grey and a matter of balancing; some questions, such as stop signs and red lights, lend themselves to clear black and white de-

---

3. Neither does Alabama require seat belts to be installed or used save in school buses. See Title 36, § 46(4) Code of Alabama, 1940, as amended, Recompiled 1958, 1969 Pocket Part, as to regulations governing approved "safety belts." See also Act No. 281, Acts 1969, p. 614, requiring school bus drivers to wear seat belts.

terminations. In this Court's judgment, the question of the use of seat belts is best resolved by a fixed standard. *An occupant of a car involved in normal, everyday driving should either be required to wear a seat belt or he should not. That determination should be left to the distinguished members of our State Legislature."* [Emphasis supplied]

Likewise, in Brown v. Kendrick, supra, the Florida Court of Civil Appeals remarked:

" * * * It may be that after further research by various safety committees, the law may be changed to require the use of seat belts and to affix some element of negligence for failure to use same. This is not the law today and it is not within the province of this court to legislate on the subject, regardless of what might be the thinking of the individual members of this court. * * *"

 The North Carolina Supreme Court in Miller v. Miller, 273 N.C. 228, 160 S.E. 2d 65, 73–74 (1968), in rejecting evidence of nonuse of seat belts in mitigation of damages, had this to say:

"The rule in North Carolina is that an injured plaintiff, whether his case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If he fails to do so, for any part of the loss incident to such failure, no recovery can be had.[4] Johnson v. Atlantic Coast Line R. R., 184 N.C. 101, 113 S.E. 606. This rule is known as the doctrine of avoidable consequences or the duty to minimize damages. Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable. 22 Am.Jur.2d Damages §§ 30–32 (1965). It has its source in the same motives of conservation of human and

economic resources as the doctrine of contributory negligence, but 'comes into play at a later stage.' McCormick, Damages § 33 (1935); Prosser, Torts § 64 at 433 (1964).

" 'The doctrine of avoidable consequences is to be distinguished from the doctrine of contributory negligence. Generally, they occur—if at all—at different times. Contributory negligence occurs either *before or at the time* of the wrongful act or omission of the defendant. On the other hand, the avoidable consequences generally arise *after* the wrongful act of the defendant. That is, damages may flow from the wrongful act or omission of the defendant, and if some of these damages could reasonably have been avoided by the plaintiff, then the doctrine of avoidable consequences prevents the avoidable damages from being added to the amount of damages recoverable.' 22 Am.Jur.2d Damages § 31 (1965).

"The seat-belt situation does not fit the doctrine of avoidable consequences because the failure to fasten the seat belt occurred *before* the defendant's negligent act and before the plaintiff's injury. * * * Nevertheless, it is closely analogous. The same considerations, however, which reject the proposition that a motorist's failure to fasten a seat belt whenever he travels is negligence, impel the rejection of the theorem that such a failure should reduce his damages. If there is no duty to fasten a seat belt, such a failure cannot be held to be a breach of the duty to minimize damages. * * *

"The problem of conjectural damages cannot be dismissed lightly when the question is what would have been the extent of the injury had the seat belt been used and what happened because the seat belt was not used. It would involve 'an extreme extension of judgment.' * *

4. In Alabama, it is the duty of one injured by the negligence of another to exercise ordinary care to reduce the damages, and he is bound to take such care of personal injuries as a reasonably prudent person would in like circumstances, and can only recover such damages as would have been sustained had such care been taken. Birmingham Ry., Light & Power Co. v. Anderson, 163 Ala. 72, 50 So. 1021.

In discussing the difficult problem presented when the plaintiff's prior conduct is found to have played no part in bringing about an impact or accident, but to have aggravated the ensuing damages, Prosser makes this observation: 'Cases will be infrequent, however, in which the extent of aggravation can be determined with any reasonable degree of certainty, and the court may properly refuse to divide the damages upon the basis of mere speculation.' Prosser, Torts § 64 at 434 (1964)." [Emphasis supplied]

We confess that not all the reasons other courts have given in support of their decisions disallowing the seat belt defense in mitigation of damages impress us. But we are impressed, first of all, by the fact that of those jurisdictions which have decided the question only one has admitted evidence of nonuse to mitigate damages. This fact, in itself, is of some persuasive substance.

The reasons which do impress us as being sound and those on which we rely for our holding are:

(1) *There is no statutory requirement in Alabama* that seat belts be installed or that they be used.

(2) In the absence of a statutory requirement admission of evidence of nonuse of available seat belts can only be justified by resort to *common law principles* under our established rules of evidence. That is, by our taking notice of studies demonstrating that seat belts are effective protective devices and our requiring their use. In view of the controversy which still surrounds the effectiveness of seat belts, particularly in those situations in which injuries may even be attributable to wearing seat belts, we are unwilling now to accept such studies as of decisive probative value. If we adopted such a requirement would it not result in every passenger's being forced to "buckle up" or risk a jury's adverse verdict?

(3) To admit such evidence of nonuse would permit the jury to "*compare the damages*" which in practical effect might reach almost the same result as "comparative negligence"—a doctrine unknown to Alabama law.

(4) To admit such evidence would create the anomalous situation in which a plaintiff in *a vehicle equipped with seat belts would be penalized* as compared with a plaintiff in a vehicle unequipped with seat belts.

(5) Requiring one to use available seat belts results in one who is lawfully using the highways having to *anticipate that another driver may be negligent.*

(6) Permitting the jury to compare the damages attributable to the negligence of a defendant with that attributable to a failure to use available seat belts would allow the jury to enter into the *realm of speculation and conjecture.*

(7) Adoption of such a requirement may *conflict with traditional tort doctrines* such as contributory negligence, avoidable consequences and last clear chance.

We do believe that if motor vehicles in Alabama are to be required to have seat belts installed and if passengers are to be made to wear them under all driving conditions, this decision should be left to the legislature, as several courts have suggested.

Perhaps we have already said more than necessary to reach our decision, but since we are presented with a question not heretofore considered by this court our discussion has been somewhat detailed.

In conclusion, we reiterate that we think the trial court did not err in sustaining objection to the proffer of the seat belt testimony and that this case should be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.