**Velton P. LANCE, Appellant,**

v.

**PEPSI–COLA BOTTLING COMPANY, Appellee.**

**No. 3892.**

Court of Civil Appeals of Texas.

Eastland.

June 26, 1964.

Rehearing Denied July 17, 1964.

Mullinax, Wells, Morris & Mauzy, Fred Weldon, Jr., Dallas, for appellant.

J. Manuel Hoppenstein, Dallas, for appellee.

WALTER, Justice.

Velton P. Lance sued Pepsi-Cola Bottling Company under the Fair Labor Standards Act. The court granted Pepsi-Cola's motion for an instructed verdict. Lance has appealed.

Levit was the manager of Pepsi. Lance called Levit in 1957 from Denison and asked for a job. Lance was employed as a syrup man at $75.00 per week. He was later raised to $80.00 per week. His duties were to roll drums of Pepsi concentrate from the storeroom to the mixing room. He pumped their contents into a mixing vat and added sugar and water to make Pepsi-Cola syrup. Carbonated water was added and the product was bottled and

the finished product was distributed by route salesmen in a twenty-one county area, all located in Texas.

On appeal from a judgment on an instructed verdict the appellate court must review the evidence in the light most favorable to the losing party. Under Rule 169, Texas Rules of Civil Procedure appellant requested Pepsi to admit: "During the period May 1, 1960 to November 28, 1960, syrups, flavorings, or other ingredients used by Velton P. Lance were shipped to Dallas from outside the State of Texas", and Pepsi replied thereto as follows: "Some ingredients were shipped from outside of Texas, but came to rest in Defendant's Warehouse before Lance used or touched any ingredient, or syrup." The request for admissions and the reply thereto do not appear in the statement of facts. The record does not reveal that they were formally introduced into evidence. They appear in the transcript. We will consider the admissions as a part of the record. McCollum v. Red River Valley Publishing Company, Tex.Civ.App., 352 S.W.2d 144, (Writ Ref. N.R.E.).

Lance worked for the company for about three years. He left one time and came back and worked awhile and then severed his relationship on a friendly basis. He was asked the following question: "All right. But as far as your employment agreement, you felt that you were doing work according to agreement and you were being paid according to agreement? That's true, isn't it?" And he answered: "Yes, sir."

Some of the facts in Higgins v. Carr Brothers Company, 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468, are quoted from the opinion:

"For the period here in question the New Hampshire trade had been discontinued and all sales and deliveries were solely to retailers in Maine. The only additional facts which we know about respondent's course of business are accurately summarized in the following excerpt from the opinion of the Supreme Judicial Court: 'It buys its merchandise from local producers and from dealers in other states, has it delivered by truck and rail, unloaded into its store and warehouse and from there sells and distributes it to the retail trade. While some of the produce* and fruit is processed, much of it is sold in the condition in which it is received. The corporation owns all of its merchandise and makes its own deliveries. It makes no sales on commission nor on order with shipments direct from the dealer or producer to the retail purchaser.' "

Higgins worked at night loading trucks for delivery to retail dealers or as a truck driver distributing merchandise to the local trade. The Supreme Judicial Court of the State of Maine affirmed the judgment dismissing the action to recover minimum wages and overtime compensation under the Fair Labor Standards Act. Affirming the judgment, the United States Supreme Court, speaking through Mr. Justice Douglas said:

"Some effort is made to show that the court below applied an incorrect rule of law in the sense that it gave the Act too narrow a construction. In that connection it is argued that respondent is in competition with wholesalers doing an interstate business and that it can by underselling affect those businesses and their interstate activities. As we indicated in Walling v. Jacksonville Paper Co., that argument would be relevant if this Act had followed the pattern of other federal legislation such as the National Labor Relations Act (see 29 U.S.C. § 152(7), § 160(a), 29 U.S.C.A. §§ 152(7), 160 (a) and extended federal control to business 'affecting commerce'. But as we pointed out in [A. B.] Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, this Act did not go so far but was more narrowly confined."

We find no evidence that appellant was engaged in the production of goods for interstate commerce or engaged in interstate commerce. He was not covered by the act.

Based on the record and the Higgins decision, we are impelled to hold that the trial court properly instructed a verdict for Pepsi.

The judgment is affirmed.