Dale L. SONNIER, Appellant,

v.

Ray RAMSEY, Individually and d/b/a
Ramsey Truck Lines, Appellee.

No. 15214.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Feb. 8, 1968.

Rehearing Denied March 7, 1968.

Nipper & Knox, James E. Knox, Houston, for appellant.

Alice Giessel, Houston, Talbert, Giessel, Barnett & Stone, Houston, of counsel, for appellee.

PEDEN, Justice.

Plaintiff was a "side-rider" or passenger in an ambulance that ran into the side of a large truck in an intersection as the truck was going east on Market Street on a green traffic light. The ambulance had entered the intersection going south on Federal Road on a red traffic light, and each vehicle had been proceeding straight ahead. The trial judge ruled that the ambulance was on an authorized emergency trip at the time.

A take-nothing judgment was entered on the jury verdict which included findings that the driver of defendant-appellee's truck did not fail to keep a proper lookout and did not fail to yield the right of way; that the ambulance driver was negligent in several ways each of which was a proximate cause of the collision; that plaintiff-appellant and the ambulance driver were engaged in a joint venture and that the monetary value of appellant's damages was zero.

Appellant's first point of error complains of the trial judge's refusal to submit his requested special issue "A" asking whether the truck driver's failure to look to the left prior to entering the intersection was a proximate cause of the collision.

We will consider his first point together with his second point, that the court erred in submitting Special Issue No. 1, and his third point, that there is no evidence to support the jury's answer to Issue No. 1. Appellant's first three points are based on his contention that the evidence conclusively shows as a matter of law that the truck driver failed to discharge his duty to keep a proper lookout. In passing on this point we consider the evidence in the light most favorable to the finding of the jury in its answer to the lookout issue which was submitted. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Special Issue No. 1 submitted in the trial court asked whether at the time and on the occasion in question Mr. Bentle, the truck driver, failed to keep a proper lookout, and the second issue was a predicated one, asking whether such failure, if any, was a proximate cause of the collision.

The truck driver, Mr. Bentle, testified that he did not look to his right or left down Federal Road before entering the intersection because he was watching his light and the traffic ahead, and also that both lanes of traffic on Federal Road were stopped. (His meaning is not clear; Federal Road carried four lanes of traffic.) He testified he did not look to his left until he heard the siren; that by then the ambulance was about 20 to 30 feet away from him and that both vehicles were already in the intersection. Further, that the streets were still wet from an earlier rain; that he was heading east on Market Street (also a four-lane street in Houston); that he had been driving in his right-hand lane on Market Street until he approached its intersection with Federal Road, when he started moving his truck into the left one of his two lanes. He was slowing down for a red light when he saw that the traffic signal controlling traffic moving straight ahead on Market Street had turned green. This occurred when he was about 50 or 60 feet from the intersection. There is evidence that his truck was noisy. He said the window on his side of the truck was down, but the jury was entitled to believe his testimony that he heard no siren until it was too late to avoid the collision. There were no physical obstructions to visibility to his left as he approached and entered the intersection, and his eyes were about seven feet above the street as he sat in the cab of his truck. The accident happened at about 2:30 p. m.; there was no evidence of fog, smoke or rain and the ambulance had sev-

eral (he said "about forty") red lights burning when the truck driver first saw it.

■ The law seems to be settled in Texas that a driver who enters an intersection with the protection of a traffic signal or a stop sign is not bound to anticipate that other drivers who are required to stop will engage in negligent or unlawful acts, but that he cannot close his eyes and proceed blindly and in disregard of dangers which might reasonably be anticipated to exist. DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95, is often cited for this principle. In Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (like DeWinne, a stop sign case), the DeWinne case is cited as authority for the rule: "Although not required to anticipate negligent or unlawful conduct on the part of others, she was not entitled to close her eyes to that which was plainly visible and which would have been observed by a person of ordinary prudence similarly situated."

Appellee has cited one case, Duncan v. Durham, Tex.Civ.App., 356 S.W.2d 377, n. w. h., in which it was held as a matter of law that a truck driver who entered an intersection on a green light but had apparently not looked down the cross street, had not failed to keep a proper lookout. The holding seems to be founded on the truck driver's explanation that he was watching a woman and child caught in the intersection by a red light. No such excuse or explanation was offered in the instant case. No pedestrians were mentioned and Mr. Bentle said his truck and the ambulance were the only two vehicles at or near the intersection which were moving.

Many Texas cases have held that ordinarily it is for the jury to decide under the circumstances of the case whether the driver kept such a lookout as a person of ordinary prudence in the exercise of ordinary care would have kept under the same or similar circumstances. Lewis v. Martin, Tex.Civ.App., 120 S.W.2d 910, writ ref.; Intges v. Dunn, Tex.Civ.App., 311 S.W.2d 877, writ ref., n. r. e.; Watts v. Dallas

Railway & Terminal Co., Tex.Civ.App., 279 S.W.2d 400, writ ref., n. r. e.; Edson v. Perry-Foley Funeral Home, Tex.Civ.App., 132 S.W.2d 282, err. dism., judgm. cor.; Tidy Didy Wash, Inc. v. Barnett, Tex.Civ. App., 246 S.W.2d 303, err. ref., n. r. e.; Henderson v. Smith, Tex.Civ.App., 354 S. W.2d 429, n. w. h.; Texas & Pacific Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332.

■ We believe that the inferences and conclusions which might properly be drawn by a jury from Mr. Bentle's assertion that "both lanes" on the intersecting street were stopped raise a fact issue as to his lookout; the jury could have taken this to be a reference to both the lanes on Federal Road which were on his left.

We overrule appellant's first point of error, because we hold that there was sufficient evidence to require the trial court to submit to the jury the question of whether the truck driver failed to keep a proper lookout. For the same reasons, we overrule appellant's second point, that the trial court erred in submitting Special Issue No. 1, and his third point that there was no evidence to support the jury's answer to that issue.

■ After examining all the evidence, we sustain appellant's fourth point, which asserts that the jury's answer to Special Issue No. 1 is so against the great weight and preponderance of the evidence as to be wrong. The facts in the instant case are unusual in that the truck driver clearly and repeatedly admitted that he looked neither to his right nor his left before entering the intersection.

In addition to the evidence as stated above, the record shows that Mr. Bentle said he was going approximately 25 miles per hour when he entered the intersection; that he did not apply his brakes before the collision; that there was nothing to obstruct his vision and that he had a clear view.

The police officer who made an investigation at the scene of the accident

testified that he concluded that the point of impact was 23 feet into the intersection on Market Street and that the ambulance had gone 25 feet into the intersection on Federal Road. He said that Market is 41 feet wide and Federal is 69 feet wide. There is an esplanade in the center of Federal Road. Thus it seems likely that the two lanes for southbound traffic on Federal Road did not contain stopped vehicles because the point of impact indicates that the ambulance was probably in the southbound lane nearest the esplanade as it approached and entered the intersection.

There was testimony that four to six red warning lights on the front of the ambulance had been burning for four blocks when the intersection was reached and that two sirens had been in operation for two blocks. The owner of a filling station at the southwest corner of the intersection said he heard the siren and then got up to look; he then saw the ambulance as it approached from about 600 feet away. Its red lights were burning, and as it approached it was moving at about 30 miles per hour. He also testified that there was another filling station on the northwest corner of the intersection and that as the truck approached to about 100 feet from the intersection one could see 300 feet northward on Federal Road.

The jury answered Issue No. 1 "We do not", so it did not answer the second issue, a predicated issue inquiring as to proximate cause. Mr. Bentle testified that under the conditions that existed (speed, wet pavement, no load on his trailer), he could have stopped his truck in 20 or 30 feet. Based on the evidence of Mr. Connor and Mr. Bentle, if Mr. Bentle had looked to his left at any point between 100 feet and about 40 feet from the intersection he probably could have at least slowed down enough to have avoided a collision some 23 feet farther on Market Street.

In his fifth and sixth points appellant says there is no evidence and insufficient evidence to support the submission of and

answer to the issue concerning Mr. Bentle's failure to yield the right of way. It is not necessary for us to rule on these points in view of our rulings on the others in this appeal.

Appellant's seventh point complains that the court erred in submitting Special Issue No. 21 concerning joint venture between the plaintiff and the ambulance driver because there is no evidence which can be the basis of an affirmative finding. His eighth point asserts that there is no evidence to support the jury's finding of joint venture. His ninth point contends that the jury's answer to Issue No. 21 is against the great weight and preponderance of the evidence.

We will try to set out all the evidence adduced on these points. The ambulance driver, a Mr. Dusek, testified that the plaintiff was employed by the same company as he was; that plaintiff's job was as side-rider; and that as driver he (Dusek) was in charge of the ambulance. He said he thought plaintiff was there because the law required two people to ride in ambulances. He related that when the accident happened plaintiff was acting as his side-rider and that as such plaintiff "had the duties of locating the scene of the accident on the maps and aiding the driver in keeping a lookout for lights and other vehicles."

Plaintiff, Dale Sonnier, testified that he had first gone to work for the ambulance company about two hours before the accident, that his compensation was to consist of room and board plus a $5.00 commission each time they went out in the ambulance and brought somebody back in it. He had a commercial driver's license but not a chauffeur's license. He said he had had no experience in ambulance work, was not qualified in first aid and understood his job was as a trainee, to ride with an ambulance driver and take his training from him.

He stated that on the day of the collision he was in the ambulance house when the telephone rang; Mr. Dusek took the call

and while still talking told Mr. Sonnier to start the ambulance motor and get it ready. He did so, turned on a switch which he thought operated the lights and stepped out of the ambulance to make sure they were working.

He testified that Dusek then came out and jumped in on the driver's side while he (Sonnier) got in on the right side. Mr. Dusek told Mr. Sonnier to work the sirens after they got away from the hospital and pointed out the buttons which made them operate. Sonnier then began operating the sirens. Mr. Sonnier related that he saw Mr. Bentle's truck and yelled, "Watch out for that truck." He testified that it was the first time he had been in the ambulance.

Dr. Wilson, who treated the plaintiff, was asked if he had seen or heard of the plaintiff before the accident and testified: "Well, now, I had heard of him. I knew him. He was an ambulance driver, I believe." We find no other evidence touching on the question of whether Dusek and Sonnier were engaged in a joint venture.

In Bonney v. San Antonio Transit Co., 160 Tex. 11, 325 S.W.2d 117, it is pointed out that a joint enterprise exists when a driver and an occupant of an automobile have not only a joint interest in the object and purpose of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance. (Citing El Paso Electric Co. v. Leeper, Tex.Com.App., 60 S.W.2d 187 and Straffus v. Barclay, 147 Tex. 600, 219 S.W.2d 65).

■ Viewing the evidence in the light most favorable to the finding of the jury in response to Issue No. 21, we hold that there was some evidence to support the submission of such issue, so we overrule appellant's seventh and eighth points. Taking the evidence as a whole, we find that the jury's answer to Issue No. 21, finding that plaintiff and the ambulance driver were engaged in a joint venture, was against the great weight and preponderance of the evidence. We believe there is sufficient evidence to demonstrate that Mr. Sonnier and Mr. Dusek had a joint interest in the object and purpose of their enterprise, but that the evidence is insufficient to support a finding that Sonnier had an equal right, express or implied, to direct and control the conduct of Dusek in the operation of the ambulance. He was a raw recruit who didn't know his duties or how to perform them. We think the great weight of the evidence shows that he was expected to aid the driver but did not have an equal right to direct *and control* his conduct.

Appellant's tenth and last point states that the jury's answer of zero to Issue No. 22, the damage issue, is not based on any evidence and is manifestly wrong and unjust.

The evidence is undisputed that plaintiff received a serious injury to his left leg. It required major surgery, three hospitalizations and the wearing of a cast for many months. The hospital records show that he received many medications for pain, and his medical expenses were over $2,000.00. He was unable to work for a number of weeks.

■ Mr. Sonnier testified that so far as he knows his leg was not injured by the original impact but by its having been run over by the wheels of Mr. Bentle's truck after he was thrown from the ambulance by the impact. Appellee contends that since the damage issue inquires as to damages proximately caused by the collision, the jury was justified in finding that he suffered no damages. We think there was no break in the chain of causal connection.

We sustain appellant's tenth point on the ground that the jury's answer is not supported by any evidence. Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795.

Appellee's reply point six states that the trial court correctly entered judgment that plaintiff take nothing because the jury found in answers to Special Issues Nos.

10 and 11 concerning plaintiff's failure to fasten his seat belt that plaintiff was guilty of contributory negligence proximately causing his injuries.

The issues as submitted and the answers given were as follows:

### SPECIAL ISSUE NO. 10

"Do you find from a preponderance of the evidence that a person of ordinary prudence in the exercise of ordinary care, acting under the same or similar circumstances as those that faced the plaintiff, Dale Sonnier, would have fastened the seat belt prior to the collision in question?

"Answer 'We do' or 'We do not'.

"To which the Jury answered 'We do'.

"If you have answered Special Issue No. 10 'We do', and only in that event, then answer:

### SPECIAL ISSUE NO. 11

"Do you find from a preponderance of the evidence that the failure of Dale Sonnier to fasten such seat belt was a proximate cause of the injuries, if any, sustained by him in the occurrence in question?

"Answer 'We do' or 'We do not'.

"To which the Jury answered 'We do'.

### SPECIAL ISSUE NO. 12

"Please state from a preponderance of the evidence what you find to be the percentage, if any, of the injuries sustained by Dale Sonnier on the occasion in question that is attributable to his failure to fasten the seat belt?

"Answer by stating the percentage, if any.

"To which the Jury answered '5%'."

We are not aware that any appellate court in Texas has written on the question of the legal effect of findings such as these.

We overrule appellee's reply point six. If there is a duty to use a seat belt (which decision is reserved for a future case), we believe the seat belt question should be considered in connection with damages rather than liability. We agree with a suggestion made by Messrs. Jerry Walker and David Beck, members of the Houston Bar, in an article entitled "Seat Belts and The Second Accident" in the Insurance Counsel Journal for July, 1967, at page 355, that the matter be regarded in mitigation of damages rather than contributory negligence.

The failure to use a seat belt may contribute to the cause of the injury, but almost never to the cause of the accident. This sounds in damages, not liability.

The analogy to the duty to minimize the consequences is not complete, because such duty arises after the accident, but we think the problem more closely related to damages than to liability.

For the reasons stated, this cause is reversed and remanded to the Trial Court for a new trial.