**RED TOP TAXI COMPANY et al., Victor Moreno d/b/a Red Top Taxi Company, and Roberto Bazan, Appellants,**

**v.**

**Raymond D. SNOW et ux., Individually, and as Manager of the Community Property of his wife Lois F. Snow, and Lois F. Snow, Appellees.**

**No. 512.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 26, 1970.

Rehearing Denied April 16, 1970.

Bonilla, DePena, Read & Bonilla, Wm. J. Nutto, Leo Duran, Walter Groce (on motion for rehearing), Corpus Christi, for appellants.

Francis I. Gandy, Jr., Corpus Christi, for appellees.

## OPINION

SHARPE, Justice.

This suit was instituted by appellees Raymond D. Snow and wife, Lois F. Snow, against appellants, Victor Moreno, d/b/a Red Top Taxi Company and Roberto Bazan, for damages on account of personal injuries to Mrs. Snow and property damage to appellees' automobile resulting from a collision in Corpus Christi, Texas on November 7, 1967 between a Red Top Taxicab operated by Roberto Bazan and the car being driven by Mrs. Snow. Employers Casualty Company filed a petition in intervention based upon its subrogation claim for payments made under an insurance policy covering damages to the Snow automobile. After jury trial the court rendered judgment in favor of appellees and the Intervenor against appellants in the amount of $12,322.34, of which Mrs. Lois F. Snow was awarded $10,000.00, Mr. Raymond D. Snow $886.00, and Intervenor, Employers Casualty Company $1436.34.

The court submitted sixteen special issues to the jury which were found favorably to appellees (except those conditionally submitted and not answered). The jury found three grounds of negligence against Bazan which in substance were

(1) failure to stop at a stop sign controlling the intersection at which the collision occurred, (2) driving the taxicab at an excessive rate of speed and (3) failure to make proper application of the brakes on the taxicab, and that each act or omission was a proximate cause of the collision in question. The jury refused to find that Mrs. Snow was guilty of contributory negligence and found that the collision was not the result of an unavoidable accident. The damage issues were answered in an aggregate amount of $12,322.34.

The collision took place on the morning of November 7, 1967 at the intersection of Buddy Lawrence Drive with a frontage road of Interstate Highway 37 within the city limits of Corpus Christi, Texas. At the time of the collision and just prior thereto Mrs. Snow was driving her car on Buddy Lawrence Drive and Bazan was operating the Red Top Taxicab on the frontage road approaching Buddy Lawrence Drive to the right of Mrs. Snow's car. There were two stop signs on the frontage road (one on either side thereof) facing Bazan. There were no signs or traffic control devices on Buddy Lawrence Drive. The streets were wet due to rain or mist prior to and at the time of the collision. Bazan admittedly did not stop at the intersection, his testimony being in substance that he applied the brakes on the Red Top Taxicab but it slid past the stop sign and collided with the Snow automobile. Just prior to the collision Mrs. Snow had driven her car on Buddy Lawrence Drive past an embankment underlying Interstate Highway 37, which passes over Buddy Lawrence Drive at that point. Mrs. Snow testified in substance that she then saw the taxicab, applied her brakes and tried to turn her car but there was not time to avoid the collision. The evidence was legally and factually sufficient to support the jury findings on the liability issues.

Appellants assert forty-nine points of error which we will principally consider in terms of the basic contentions included therein.

■ The basic contention of appellant Moreno, raised by Point One and other related points of error concerns the finding of the trial court, included in the judgment, "that Roberto Bazan was an employee of Victor Moreno, d/b/a Red Top Taxi Company, and at the time of the collision made the basis of this suit, Roberto Bazan was operating a taxicab and was acting within the scope and course of his employment with Victor Moreno, d/b/a Red Top Taxi Company." Moreno says in substance that there was no evidence to show either a master-servant relationship between Moreno, d/b/a Red Top Taxi Company and Bazan or that Bazan was acting within the scope of his employment at the time of the collision between the taxicab operated by Bazan and the automobile operated by Mrs. Snow. Moreno further contends that for such reasons his motion for directed verdict after the evidence was closed and his motion for judgment non obstante veredicto should have been granted. We disagree with such contentions because the facts found by the trial court, as above-stated, were conclusively established. This is true because of allegations and admissions made by Moreno in his pleadings and sworn answers to appellees' request for admissions considered in connection with the testimony of Bazan. Therefore, there were no issues to be submitted to the jury concerning the facts so found by the trial court.

The defendants' second amended original answer contained a number of dilatory pleas (which preceded a general denial) including special exceptions and others without specific designations, all of which were sworn to by Victor Moreno who answered as "Victor Moreno, d/b/a Red Top Taxi Company." Some of these special exceptions and pleas read as follows:

## "VIII.

"Further, Defendants specially except to Paragraph IV in Plaintiff's First

Amended Original Petition because the same treats Victor Moreno and Red Top Taxi Company as separate legal entities whereas and in fact they are but one in the same legal entity.

\* \* \* \* \* \*

## X.

"Defendants further specially except to say that there is a defect in parties' Defendants in that Red Top Taxi Company as such is but an assumed name under which Defendant, Victor Moreno, does business as a proprietorship; the same being solely owned and operated by Defendant, Victor Moreno; that the designation of Red Top Taxi Company as a separate legal entity to be sued should be stricken in all respects throughout Plaintiff's Pleadings.

## XI.

"Defendants specially alleges that Red Top Taxi Company has not the legal capacity to be sued as a separate legal entity since said company is solely owned and operated by Defendant, Victor Moreno, as a proprietorship; wherein the said Defendant, Victor Moreno, does business as Red Top Taxi Company; that the separate designation of Red Top Taxi Company as a separate legal entity to be sued should be stricken in all respects throughout Plaintiff's Pleadings.

## XII.

"That Plaintiff is not entitled to recover anything against Red Top Taxi Company since the same is but an assumed name under which Defendant, Victor Moreno, solely does business as proprietorship. That the designation in Plaintiff's Pleadings against Red Top Taxi Company as a separate and legal entity to be sued should be stricken in all respects."

Appellants also filed a separate answer to the petition in intervention of Employers Casualty Company (based upon a subroga-tion claim for $1436.64 paid under an insurance policy for damages to the Snow automobile) in which Moreno answered as "Victor Moreno d/b/a Red Top Taxi Company."

In reply to appellees' request for admissions Victor Moreno filed sworn answers in which he admitted, among other things, that Red Top Taxi was one of the defendants in the case, had been served with proper process and had appeared therein; that on November 7, 1967, Red Top was the owner of a 1966 Plymouth Taxicab, 1967 Texas License Plate No. HW 2922; and that on November 7, 1967 Roberto Bazan operated that Taxicab. In response to request for admission No. 7 that "On November 7, 1967, Roberto Bazan was an employee of Red Top," Moreno, d/b/a Red Top Taxicab Company answered "Denied, on the basis that Roberto Bazan was working on a commission basis only." In response to other related requests for admissions concerning use of the Taxicab and the duties of Bazan as an employee, Moreno answered in part "While Roberto Bazan does drive a taxi on a commission basis for Victor Moreno, Victor Moreno does state that the said Roberto Bazan does not work as an employee of his all day long but does activities on his own," and Moreno also in part answered "Denied by reason of the fact that Roberto Bazan is not really an employee of the Red Top Taxi Company because he works on a commission basis" (answer to request No. 16). In answer to request No. 23 "That mechanical failure of any part of the Plymouth taxicab referred to in the foregoing requests, in no way contributed to the collision in which the Plymouth taxicab was involved on November 7, 1967" Moreno answered "cannot answer this Request for Admission because the said Victor Moreno is still investigating the reasons why the automobile skidded prior to the accident." Roberto Bazan testified in part that he was working for Red Top Taxi Company on November 7, 1967, began his work at 9:00 A.M. on that date, and was on duty for Red Top Taxi Com-

pany and had a passenger in his cab at the time of the collision with the Snow vehicle. Bazan further testified that he called the office immediately after the collision, reported the accident and the manager or supervisor of the cab company came to the scene of the accident shortly thereafter.

■ It is well settled that facts which are alleged by both parties or admitted in trial pleadings are established as a matter of law and do not require further proof. A litigant is not required to prove the allegations of fact admitted by his adversary to be true. Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726, 729 (1941); Canales v. Bank of California, 316 S.W.2d 314, 318 (Tex.Civ.App., Eastland, 1958, wr. ref. n. r. e.) and authorities therein cited.

The rule concerning facts established by the pleadings is also applicable to admissions under Rule 169, Texas Rules of Civil Procedure. See Lance v. Pepsi-Cola Bottling Company, 380 S.W.2d 919 (Tex.Civ. App., Eastland, 1964, n. w. h.); McCollum v. Red River Valley Publishing Company, 352 S.W.2d 144, 146 (Tex.Civ.App., Amarillo, 1961, wr. ref. n. r. e.); Fuller Nurseries & Tree Service v. Jones, 253 S.W.2d 946 (Tex.Civ.App., Austin, 1952, n. w. h.).

We agree with appellees that there were no issues of fact as to whether Bazan was an employee of Moreno d/b/a Red Top Taxi Company and acting in the scope of his employment at the time of the accident in question, and that the trial court properly made the above-stated findings relating to such matters. Appellants' motions for directed verdict and for judgment non obstante veredicto were properly denied. Appellants' Points 1, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 are overruled.

Appellants' Point two reads as follows:

"The Court erred in permitting plaintiffs to reopen their case for further testimony over defendants' objection because both plaintiffs and defendants had closed and rested and no motion was presented to re-open; and the court had already overruled defendants' motion for directed verdict."

On the morning of February 19, 1969, after both sides had closed on the preceding day, appellants presented their motion for directed verdict which was overruled by the court. The Statement of Facts reflects that immediately thereafter counsel for appellants stated his understanding that the court was to permit appellees to reopen the case for the purpose of questioning Victor Moreno, who had not theretofore testified. Appellants objected and excepted to such action and Moreno was called as a witness by appellees and permitted to testify as follows:

"Q Will you state your name, please, sir?

A Victor Moreno.

Q Mr. Moreno, you are one of the defendants in this case?

A Yes, sir.

Q And you own and do business as Red Top Taxi Company?

A Yes, sir.

Mr. Gandy: That's all.

Mr. Bonilla: No questions."

■ The action of the trial court does not present error or reversible error for two reasons. First, the ruling of the trial court was within its discretion and no abuse is shown. Rule 270, T.R.C.P.; Southern Underwriters v. Hodges, 141 S. W.2d 707, 712 (Tex.Civ.App., Waco, 1940, wr. refused); 56 Tex.Jur.2d, Trial, Secs. 118–120, pp. 464–468. Second, the testimony of Moreno was purely cumulative and added nothing to what had been established by the pleadings, admissions and other evidence. If error is presented, it is in any event harmless. Rule 434, T.R. C.P.; Southland Life Ins. Co. v. Greenwade, 143 S.W.2d 648, 652, affirmed 138

Tex. 450, 159 S.W.2d 854, 859 (1942). Appellants' point two is overruled.

Appellants' points five, eighteen, forty and forty-one assert in substance that the evidence was legally and factually insufficient to support the jury finding in answer to special issue number 14, which reads as follows:

### "SPECIAL ISSUE NO. 14

"What sum of money, if any, do you find from a preponderance of the evidence, if paid now in cash, would fairly and reasonably compensate Lois Snow for the injuries, if any, which you believe from a preponderance of the evidence she has sustained as a direct and proximate result of the occurrence in question?

"In answering this issue you are instructed that you may take into consideration the following elements of damage, if any, and none other:

"(a) Physical pain, if any, and mental anguish, if any, which you believe from a preponderance of the evidence Lois Snow has sustained since the date of the occurrence up to the present time as a direct and proximate result of the occurrence in question.

"(b) Physical pain, if any, and mental anguish, if any, which you believe from a preponderance of the evidence Lois Snow, in reasonable probability, will suffer in the future and after this date as a direct and proximate result of the occurrence in question.

"Answer in dollars and cents, if any.

Answer: '$10,000.00'."

Appellants' point forty-seven asserts that the damages awarded to Mrs. Snow were excessive and that a new trial should be ordered unless a remittitur of $8,500.00 is required, as set out in their motion for new trial. The testimony concerning the injuries suffered by Mrs. Lois Snow as a result of the accident and her condition thereafter was furnished by her, Mrs. Lela Snow, mother of Raymond D. Snow and Dr. Thomas L. York.

Mrs. Lois Snow testified in part as follows: After the accident she went to Dr. York's office and saw another physician there. She later was examined and treated by Dr. York who prescribed therapy, physical traction and heat treatment. That treatment was principally administered over a period of time by Jerry Feldman, a physical therapist. She also continued to be treated by Dr. York who gave her injections and prescribed home treatment of traction, heat, and hot water baths. She suffered terrible pains in her arm, upper back, neck and had terrible headaches. Her left arm would go numb. She does not have use of her left arm all the time, it seems to want to dangle. She cannot reach for things, like at the table, passing something to the children, reaching across the table. Her arm will not stretch out and she lacks strength in it. She suffers pains in her arm from two of her fingers extending up the arm into her shoulder and neck, and when she moves her neck. She has had headaches since the accident and still suffers from them. They come and go. Her condition has interfered with performance of her daily duties and it bothers her to sweep the floor, clean windows, blinds or anything when she puts her arm over her head. After the collision her mother-in-law, Mrs. Lela Snow, performed housework for appellees every day for a period of about five months, although at times Mrs. Lois Snow did some of it. There has been some improvement with reference to her headaches, and they do not occur as frequently as before; but they still come every few days and she uses home traction and takes hot baths. When these attacks are severe she also takes medication prescribed by the doctor for pain. The medication relaxes her and affects her judgment. The attacks were more frequent during the period just after the accident, but they slacked off to about two a week some four or five months before the trial in February 1969. At times she uses a cervical

halter weighing about ten pounds, which Dr. York prescribed for her. The halter is used as a substitute for going to the therapist. Mrs. Lois Snow further said that prior to the accident her health was good and she did not have trouble with her neck or weakness in her arm prior thereto. Mrs. Snow further testified that she had been working for about eight months prior to the trial for a credit union. Dr. York has been her family doctor for many years before the accident in question. Mrs. Snow was 34 years of age at the time of trial.

Dr. Thomas L. York testified in part as follows: He examined and treated Mrs. Lois Snow following the collision of November 7, 1967 (beginning two days thereafter). His original findings were muscle spasm in the neck, shoulder and back muscle. He prescribed mild muscle relaxants and application of heat and also recommended that Mrs. Snow sleep on bed boards. Mrs. Snow returned to Dr. York complaining of headaches, muscle spasm and shoulder pain. He prescribed, in addition to the above-mentioned treatment at home, five physiotherapy treatments at the Feldman Physiotherapy Department. He later examined her on November 24, 1967 and there was some improvement without basic change. He recommended further physiotherapy from Mr. Feldman, and described various phases of that type of treatment including head traction and medical stimulation. He described the condition of muscle spasm and how pain and headaches could result therefrom, using diagrams or charts in connection with such testimony. Dr. York last examined Mrs. Snow before the trial on January 20, 1969 at which time he felt, in view of extensive physiotherapy, head traction and use of pain medicine, that as to her condition of muscle spasm, she had reached maximum benefit; that he had done all he could for her and suggested a neurologist's consultation. The Doctor further testified in substance that it was his opinion "being as truthful as I can, that after this much disability, she probably will not improve if she hasn't until now." Dr. York's final diagnosis of Mrs. Snow's condition was "chronic myositis of the trapezius longus fibroid muscle and ulna nerve site dural syndrome". He further testified that he had treated Mrs. Snow for about fifteen years and she had not complained of nor had he treated her for symptoms similar to those she has had after the accident in question. On cross-examination Dr. York gave his opinion that Mrs. Snow had developed some symptoms of disc injury in the cervical area, relating this to the collision in question, and that Mrs. Snow's condition was worse in August 1968 than it was on November 24, 1967, some 17 days after the accident, at which time she had shown some improvement.

Mrs. Lela Snow, mother-in-law of Mrs. Lois Snow testified in part as follows: She went to the scene of the collision on November 7, 1967 shortly after it occurred. Mrs. Lois Snow was in shock and was taken to the hospital by two daughters of Mrs. Lela Snow. After Mrs. Lois Snow returned to her home from the hospital on the same day, Mrs. Lela Snow stayed with her son, daugher-in-law and their two children practically all the time. Mrs. Lela Snow did their housework daily for a period of about five months, because she said Mrs. Lois Snow was not able to do it. Mrs. Lela Snow still helps out sometimes with such work.

■ It appears that more than fifteen months elapsed between the date of the accident and the time of trial. The evidence was legally and factually sufficient to establish that Mrs. Lois Snow had suffered considerable pain and mental anguish during that period of time. Much of appellants' argument under the points now under consideration is directed to the evidence concerning whether Mrs. Snow in reasonable probability will suffer physical pain and mental anguish after the trial in February 1969 as a proximate result of the collision in question. We agree with appellants that the evidence on this phase of the case is not nearly as strong as that concerning physical pain and mental anguish

up to the time of trial. However, we cannot determine what amount was awarded in connection with either subdivision (a) or (b) of Special Issue 14, and we cannot say that the evidence is legally or factually insufficient to support the jury answer on subdivision (a) alone. There is no formula for exact measurement of pecuniary compensation for past and future physical pain and mental anguish. The amount reasonably necessary to compensate an injured person for such elements of damage must largely be left to the discretion of the jury. See Greyhound Lines, Inc. v. Craig, 430 S.W.2d 573, 578, 579 (Tex.Civ. App., Houston 14th, 1968, wr. ref. n. r. e.); Missouri Pacific Railroad Co. v. Miller, 426 S.W.2d 569, 574 (Tex.Civ.App., San Antonio, 1968, n. w. h.). We cannot hold that the jury answer to special issue 14 is not supported by legally and factually sufficient evidence. Nor can we hold that the said award to Mrs. Snow is excessive so as to authorize a new trial unless a remittitur is ordered. See Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959). Appellants' points 5, 18, 40, 41 and 47 are overruled.

■ We next consider appellants' point forty-eight which asserts that the trial court erred in refusing to submit their requested special issues Nos. 15, 16 and 17 with reference to the failure of Mrs. Snow to use an available seat belt. The three requested issues were in substance the same as those involved in the case of Sonnier v. Ramsey, 424 S.W.2d 684 (Tex.Civ. App., Houston 1st, 1968, wr. ref. n. r. e.). Aside from the question of negligence on the part of Mrs. Snow in failing to fasten her seat belt prior to the collision in question, appellants' contentions on this phase of the case are not well taken because there was no evidence to authorize the submission of an issue as to whether such failure was a proximate cause of any injuries suffered by Mrs. Snow. Counsel for appellants attempted to develop evidence on that issue during the cross-examination of Dr. Thomas L. York, but his testimony was in substance that he really did not know about the matter and could not testify with any certainty about it. There was no other attempt to develop evidence relating to the subject. We do not agree with appellants that the seat belt issues were relevant to the liability issues involving the alleged contributory negligence of Mrs. Snow. See Sonnier v. Ramsey, supra. Nor were those issues improperly refused in this case in the absence of evidence concerning proximate cause. Appellants' Point 48 is overruled.

■ We next consider appellants' point nineteen which asserts that the court erred in admitting into evidence over appellants' objection the plaintiffs' (appellees) Exhibit No. 12, which was the bill or statement of Jerry Feldman, Physical Therapist, in the amount of $196.00. Appellees attempted to prove up the bill of Feldman (who did not testify) while the witness Dr. Thomas L. York was on the witness stand. Dr. York testified that he prescribed the treatment of Mrs. Snow by Mr. Feldman, that the treatment was necessary and the charges shown on Feldman's statement were customary and reasonable. However, Dr. York did not know of his own knowledge that the treatments were rendered by Feldman. There was no other evidence of probative force which would establish the number of visits by Mrs. Snow for treatment by Feldman or to show that any particular item on his statement was correct. Mrs. Snow testified generally that she had been treated by Feldman on various occasions, but her testimony was not sufficient to support the amount of $196.00 shown on Feldman's statement or any specific item thereof. The appellees' Exhibit No. 12 should not have been admitted under these conditions. In answer to Special Issue 15, which inquired concerning past medical expenses incurred by Mrs. Snow the jury found the amount of $336.00. Of this amount $140.00 (the statement of Everhart Clinic, with which Dr. York is connected) was not questioned, leaving the amount of $196.00 represented

**780**

by Feldman's bill. Appellees, subject to a contention of waiver (because no objections were made to Issue 15) which is not well taken, offer to remit the amount of $196.00. We hold that under the circumstances such amount should be deducted from the recovery allowed to appellee Raymond D. Snow. Appellants' point nineteen is sustained and the judgment will be reformed in accordance with such holding. Point twenty, which asserts that a new trial should be granted because "there is insufficient evidence to support the finding of the jury in response to Special Issue 15" is overruled in view of our action in sustaining appellants' point nineteen.

We have considered each of appellants' remaining points of error and find that none of them presents error or reversible error, and they are overruled.

The judgment of the trial court will be reformed so as to reduce the recovery of appellee Raymond D. Snow by the amount of $196.00; that is, his recovery will be reduced from $886.00 to the amount of $690.00. In all other respects the judgment below is affirmed. The cost of appeal will be taxed three-fourths against appellants and one-fourth (¼) against appellees.

The judgment is reformed in part and as so reformed is affirmed.