**Mrs. Jo Hagan MERCER et vir, Appellants,**

**v.**

**Ca¹vin M. BAND et ux., Appellees.**

**No. 15936.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

July 13, 1972.

Rehearing Denied Sept. 7, 1972.

in that the vehicle in which they were riding was equipped with seat safety belts and they failed to use them. This failure was negligence and a proximate cause of their own injuries and damages."

Prior to voir dire examination of the jury appellees filed a motion in limine asking the court to strike the above paragraph from the answer and to instruct counsel to in no way bring the matter contained therein to the attention of the jury. The court sustained the motion and appellants were not permitted to read this pleading or introduce evidence before the jury relating to seat belts.

Appellants' contention here is that the failure to use available seat belts may be shown for the purpose of reducing a plaintiff's damages to the extent that the injuries may be shown to have been caused by such failure. They assert that the evidence was sufficient to raise the issue.

In reply appellees assert there is no evidence to show the following:

1. A causal relationship between the injuries sustained and the failure to use seat belts.

2. No expert evidence to show the effect of wearing a seat belt.

3. That the injuries would have been lessened if seat belts had been worn.

4. To show what amount of damage would have been caused if the seat belts had been fastened or unfastened.

Also, appellees assert there is no duty to use a lap strap seat belt.

Admitted in evidence was the following testimony which might be said to be material to some questions raised.

The collision occurred at the intersection of U.S. Highway 59 and 4th Street. Ap-

Talbert, Giessel & Stone, Alice Giessel, Howell E. Stone, Houston, for appellants.

Helm, Jones & Pletcher, David H. Burrow, Houston, for appellees.

BELL, Chief Justice.

Appellees recovered judgment against appellants in the amount of $34,337.00 for injuries sustained as a result of an automobile collision which occurred in the City of Richmond on August 26, 1966.

Appellants' answer contained the following allegation:

"In addition, the Defendant will show that Plaintiffs were themselves negligent

pellee Mr. Band was driving in a south-westerly direction on Highway 59 and Mrs. Mercer was driving northeasterly on 4th Street. Mrs. Mercer's automobile hit the Band automobile just back of the right headlight and the force of the collision caused the right front fender to be severe-ly damaged. The Band automobile ended up near a statue on the court house lawn on the northeast side of Highway 59. The righthand door came open and Mrs. Band was thrown to the pavement. Mrs. Band's physicians found her injuries, which were allegedly received as a result of the colli-sion, to be nerve root damage in lower back and neck together with localized areas of chronic muscle inflammation in the neck-shoulder region on the right, dam-age to the first sacral nerve root on either side in the lower back, damage to the third or fourth nerve root in the right side of the neck or nerve branches arising from these nerve roots, lumbar sprain, multiple abrasions and contusions and fracture of the right fifth metatarsal, with exostosis formation, and bilateral S–1 radiculopathy and right cervical instability, levator scapu-lar syndrome.

Mr. Band's jaw was broken in two places. His head was cut open. Two bot-tom teeth were cracked and sticking for-ward and his jaw bone was cracked in the back where it hinges. He had a brain con-cussion. He had a bruise on the chest and knee.

Mrs. Band testified that five months be-fore the collision she had her right ovary removed because of a cyst on it. After the collision she had trouble with the incision and received cortisone injection in the inci-sion because it was protruding. She testi-fied she "assumed" the abrasions on her hips, arms, elbow, legs and knee were re-ceived when she landed on the pavement but to say that these were received from being thrown on the pavement as contrast-ed with anything that happened in the car itself would be "guessing".

Mr. Band testified the force of the colli-sion had a tendency to throw him toward the right. He reached to the right to try to keep his wife from falling out. In doing this he got from under the steering wheel. He then attempted to get control of the car but he doesn't think he made it. He received cuts on the head. After the wreck he looked at the windshield. He said his head hit the windshield. He "pre-sumed" it was the windshield because his head was cut open. The windshield was broken at a point to the right. After re-ceiving the blow he must have been knocked unconscious because after that he remembered nothing. He fell out the front door on the right. He at one point testi-fied he didn't recall hitting the windshield. He said he really did not know what he struck inside the car. He could not say what injuries he received in the car, be-hind the steering wheel, the windshield or what.

The evidence offered but excluded ap-pears in a bill of exception and is substan-tially as stated below.

Mr. Band stated the automobile was equipped with waist-type seat belts for the driver and a front seat passenger. They are of the type that you unfasten by push-ing a button. If you hit the button the belt "disengages." He did not know whether his was fastened or not. He hit the wind-shield on the right side. He said if it was fastened he couldn't have gotten to the right or fallen out unless the belt had bro-ken. He later saw the automobile but he could not open the doors and he did not know whether the belts were broken. He didn't know whether his wife was wearing a seat belt but presumed she was not be-cause of the operation. He didn't know whether she struck any part of the interior of the car upon initial impact. Band did not know whether he hit the button in his attempt to grab his wife. He could not say where his wife's injuries came from. He could not say whether his jaw was bro-ken from his having hit the windshield or

the steering wheel. He didn't know whether he hit the steering wheel. He had no idea how his wife received her injuries.

Part of Mrs. Band's deposition was offered as a part of the bill of exception. There she testified she didn't "hit the windshield or anything like that" inside the car. She had a knot on the back of her head after the collision. She didn't remember hitting anything in the car. She didn't know whether she "hit something going out or what, or on the pavement or what." She did not recall whether hitting in the car resulted in any cut on her body. She got a scrape on the elbow from the pavement. She had a deep abrasion on the right hip that left a scar. There were scrapes on the right knee which she assumed she got on the pavement. She would assume she got the abrasion on her left hand from the pavement. She did not know whether she or her husband was wearing a seat belt.

The problem of failure to use available seat belts has been before the Texas courts in the following cases: Sonnier v. Ramsey, 424 S.W.2d 684 (C.C.A.—Houston 1st), ref., n. r. e.; Tom Brown Drilling Company v. Nieman, 418 S.W.2d 337 (C.C.A.—Eastland), ref., n. r. e.; Quinius v. Estrada, 448 S.W.2d 552 (C.C.A.—Austin), ref., n. r. e., and United Furniture v. Johnson, 456 S.W.2d 455 (C.C.A.—Tyler), n. w. h.

In Nieman and Johnson the courts held there was no evidence that the injuries were caused by the failure to use seat belts. In Nieman the court said: "In the instant case there was no evidence by expert witnesses or otherwise that Mrs. Brannan or Mrs. Nieman would not have died as a result of the accident if they had been using their seat belts." In Johnson the court said, the burden was on the defendant to prove the fact and amount of damages flowing from the failure to use seat belts.

In Quinius the court held there was no duty to use a seat belt because the driver of the plaintiff's automobile could not anticipate the negligence of the defendant. There a plea of contributory negligence for failure to use a seat belt had been made. The court stated it did not have before it the question of whether there was an obligation to use a seat belt in order to mitigate damages.

In Sonnier this court held there was no causal relation between the failure to use a seat belt and the collision that resulted in plaintiff's injuries. We refrained from passing on whether there was a duty to use an available seat belt. We noted that the failure to use a seat belt might contribute to the cause of the injury but not to the accident. We then noted, however, the analogy to the duty to minimize the consequences was not complete because such duty arises after the accident.

There are cases in other jurisdictions discussing the problems. They may be found cited and discussed in the cases of Britton v. Doehring, 286 Ala. 498, 242 So. 2d 666; Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65, and Barry v. Coca Cola Co., 99 N.J.Super. 270, 239 A.2d 273. We only note that we have read all of the cases. The three cases we have cited all hold there is no duty to use available seat belts. This makes such failure to use unavailable in mitigation of damages. While some few cases find a duty and allow a breach to be considered on the issue of damages, it is interesting to note that in none of them was there found to be evidence sustaining a mitigation of damages.

We find it unnecessary in this case to determine whether failure to use an available seat belt may be considered in mitigation of damages, because we are of the view there was no evidence of probative force to show that the injuries received by plaintiffs would not have been received had they been wearing seat belts or that the injuries would have been less severe. We agree with the Tyler Court of Civil Appeals that if there is a duty to use the seat belt, the burden was on the defendant to prove the fact and extent of injuries

flowing from the failure to use same. This appellants failed to do.

We are aware that appellants were not permitted to read the pleading to the jury asserting failure to use seat belts in mitigation of damages or to introduce evidence before the jury on the issue. However, they were in no way limited in presenting evidence to the court on their bill of exception. The evidence contained in the bill of exception and that admitted before the jury showing how the accident happened and the nature of the injuries received has all been considered by us in reaching our conclusion.

Affirmed.